51 CCPA
**Application of Alan H. NATHAN, John A. Hogg and William P. Schneider.**

**Patent Appeal No. 7145.**

United States Court of Customs and Patent Appeals.

March 12, 1964.

Eugene O. Retter, Washington, D. C., A. Blaufarb, The Upjohn Company, for appellant.

Clarence W. Moore, Washington, D. C. (J. E. Armore, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

MARTIN, Judge.

This appeal is from a decision of the Patent Office Board of Appeals affirming the examiner's rejection of claims 1 through 16 of appellants' application serial No. 759,400, filed September 8, 1958 for "Steroids." No claim has been allowed.

The appealed claims are directed to certain 2–halo (fluorine or chlorine) steroids, the compound 2–halo (fluoro–or chloro–)–17α, 21–dihydroxy–4–pregnene–3,20–dione being representative of the claimed compounds. All the claims further, as the result of an amendment entered during prosecution of the application before the Patent Office, specify the alpha (α) orientation for the 2–halo substituent.

The relationship of the 2–halo atom to the steroid nucleus of the claimed steroids can be represented diagrammatically as:

halo bonded → to $C_2$

The 2–position of the molecule of appellants' steroids is represented by saturated carbon atom $C_2$. Saturated carbon atom $C_2$ is bonded to saturated carbon atoms $C_1$ and $C_3$, to the hydrogen substituent and to the fluorine or chlorine substituent.

Appellants point out that because of the relation of the valance bond angles of the saturated carbon atoms of the steroid, one of the two substituents attached to saturated carbon atom $C_2$ will project toward one side of the approximate plane of the steroid nucleus and the other substituent toward the other side of that plane. The substituent which projects toward the opposite side from the angular methyl groups (carbon atoms $C_{18}$ and $C_{19}$) is said to have the alpha orientation, whereas the substituent projecting toward the same side from the angular methyl group is said to have the beta orientation.

The record shows that on June 15, 1959 appellants amended their specification and claims to indicate that the 2–halo steroids of their invention had the alpha orientation. This amendment was in response to the examiner's first action on the claims. That action, according to the examiner's answer, "merely rejected the claims as unduly broad and indefinite in failing to give the configuration (alpha or beta) of the 2–halo atoms." On June 2, 1960 appellants submitted an affidavit under Rule 132 in support of the propriety of their amendment, which affidavit reads in part:

"THAT, the synthesis of the steroid compounds accomplished in the course of completing the invention described and claimed in the above-identified application involved, in the case of the 2–fluoro compounds, the introduction of a fluorine atom in

the 2–position of a certain $\Delta^4$–3–keto steroid of the pregnane [sic] series; namely, an alkali metal enolate of 2–alkoxyoxalyl–11β, 21–dihydroxy–4,–17(20) – [cis] – pregnadien – 3 – one (Preparation 6 of the specification) by reaction with perchloryl fluoride to produce 2–fluoro–2–alkoxyoxalyl–11β, 21–dihydroxy–4,17(20)–[cis]–pregnadien–3–one;

"THAT, this latter compound was then converted to a 2–fluorinated–11β, 21–dihydroxy–4,17(20–[cis]–pregnadien–3–one (the product of Preparation 6 of the specification);

"THAT, we are aware of the work of others wherein a fluorine substituent has been introduced by the reaction of perchloryl fluoride upon the 2–alkoxyoxalyl substituted $\Delta^4$–3–keto steroid (Kissman et al., J.A.C.S. 81:1262); * * * and we are moreover aware that in * * *. [that work] the stereoconfiguration of the 2–fluorine substituent is designated as the α–configuration based, * * * upon physical evidence consistent with such a configuration; and moreover we are unaware of any facts inconsistent therewith;

"THAT, we converted the product of Preparation 6 of the specification to 2–fluoro hydrocortisone acetate by the process of Preparation 7 and Example 1 and that we hydrolyzed the product of Example 1 by the process of Example 6 thus producing 2–fluoro hydrocortisone;

"THAT, in the case of the Kissman et al. work, we have made a comparison and found that our 2–fluoro hydrocortisone, prepared by the hydrolysis of the product of Example 1 of the specification and have found physical characteristics consistent with and no physical characteristics inconsistent with the identity thereof;

"THAT, these physical constants are:

"For the 2–fluoro hydrocortisone prepared by hydrolysis of our Example 1 by the process of Example 6 of the specification:

"Conjugated ketone band at 5.97 μ.

λmax at 242 mμ, E 14,200 (in ethanol).

αD plus 185 degrees (methanol).

Melting point 212–221 degrees centigrade.

"The physical characteristics reported by Kissman et al. are:

"Conjugated ketone band at 5.87 μ.

λmax 241 mμ, E 14,800.

αD plus 190 degrees (methanol).

Melting point 216–220 degrees centigrade.

"THAT the product of our Example 6 is identical with the product designated as 2α–fluoro hydrocortisone of Kissman et al.;

"THAT, the subsequent chemical conversions to which the compounds disclosed and claimed in the above-identified application for patent are subjected do not alter the stereoconfiguration of the 2–fluoro substituent; * * *."

In rejecting the claims, the examiner took the position that the alpha configuration of the 2–halo substituent is not inherent in the compounds disclosed in the case as originally filed and since the configuration of the 2–halo substituent was not included in the application as filed, it may not be entered at a later date.

The board held that amendatory material designating the 2–halo substituent as alpha oriented, has no basis in the original disclosure and thus is in violation of the last sentence of 35 U.S.C. § 132[1] which prohibits the introduction of new matter. The board was not con-

1. 35 U.S.C. § 132 reads:
    "Whenever, on examination, any claim for a patent is rejected, or any ob-

jection or requirement made, the Commissioner shall notify the applicant thereof, stating the reasons for such

vinced of any error in the examiner's rejection and stated that it was "not satisfied that extraneous evidence discovered after the filing of the application can be used as support for a stereoconfiguration not originally disclosed." Regarding the Rule 132 affidavit the board stated:

"The difficulty with the Rule 132 affidavit is that appellants attempt to identify their compounds on the basis of the knowledge of others acquired after the filing date of the instant application. * * * "

Appellants urge that the application as filed taught those skilled in the steroid art how to prepare and identify the claimed 2-halo steroids and that accordingly the amendatory material does not constitute new matter. It is contended that the amendment merely defines more precisely for those skilled in the art the 2-steroids inherently produced by the process of the application as filed and identified therein by physical characteristics.

It seems to us that the issue here is whether appellants' identification of their 2-halo steroids in their original disclosure is adequate to identify the claimed subject matter and whether there is sufficient evidence in the record to show the alpha orientation to be an inherent characteristic of the subject matter so identified. If the answers are in the affirmative then appellants' amendment specifying the alpha orientation for the 2-halo substituent is not new matter but rather is merely a statement of an inherent property of the steroids as disclosed in appellants' original disclosure.

■ A subsequent clarification of or a change in an original disclosure does not necessarily make that original disclosure fatally defective. This court in

Riester v. Kendall, 159 F.2d 732, 34 CCPA 859, dealt with an interference in which a count was directed to certain dyestuffs. Appellee relied on a British provisional specification for constructive reduction to practice although the structural formulae given for the identification of the respective products of the reaction in appellee's British specification *differed* from the corrected formulae for the same products recited in his U.S. application. The board nevertheless, in finding for appellee, held that his British specification disclosed the dyestuffs and the means for identifying them irrespective of the wrong formulae and thus was a sufficient disclosure of the patentable subject matter. This court found no error in the board's decision.

■ We think appellants' identification of their 2-halo steriods in their original disclosure sufficiently identifies the claimed subject matter. Appellants' original disclosure was specifically directed to a generic class of 2-halo steriods which steroids were chemically named, no question being presented as to their nomenclature aside from the orientation of the halogen at the 2-position of the steroid nucleus. Appellants' Example 1, which is stated in the application to be illustrative of the "products of the present invention," gave a definite melting point range, optical rotation, ultraviolet spectral analysis and chemical analysis for the product obtained therein. Appellants have further shown through an affidavit that the hydrolysis [2] of the product of their Example 1 of their application yields a 2-fluoro hydrocortisone which has physical constants consisent with a product designated in the art as 2α-fluoro hydrocortisone. Such evidence, we think, is adequate to demonstrate an inherent characteristic (the

rejection, or objection or requirement, together with such information and references as may be useful in judging of the propriety of continuing the prosecution of his application; and if after receiving such notice, the applicant persists in his claim for a patent, with or without amendment, the application shall be reexamined. No

amendment shall introduce new matter into the disclosure of the invention."

2. Appellants have stated in their affidavit that the subsequent chemical conversions of their Example 1 compound do not alter the stereoconfiguration of the 2-fluoro substituent and there is nothing in the record to controvert that statement.

alpha orientation) of appellants' claimed subject matter.

Thus, we consider that the amendatory material of June 15, 1959 is concerned with an inherent characteristic of an illustrative product of appellants' invention already sufficiently identified in appellants' original disclosure as filed. Such amendment is not prohibited by the statute. In Ex parte Davisson and Finlay, 133 USPQ 400, 402, for example, the board noted that the examiner had entered an amendment reciting the optical rotation data and elemental analysis of the sulfate of a claimed substance as well as the spectroscopic characteristics of the claimed substance "apparently regarding them as a statement of inherent properties of the material adequately disclosed" in an original disclosure and stated that it saw no reason for "taking a different view of the matter." We think the case at bar presents an analogous situation.

For the foregoing reasons, the decision of the board is reversed.

Reversed.