53 CCPA

**Joseph PETISI and James Howard Boothe, Appellants,**

v.

**Hans H. RENNHARD and Charles R. Stephens, Jr., Appellees.**

**Patent Appeal No. 7634.**

United States Court of Customs and Patent Appeals.

Aug. 4, 1966.

Norton S. Johnson, Stamford, Conn. (John Boustead, Roger T. McLean, Martin J. Brown, New York City, of counsel), for appellants.

Werner H. Hutz, Wilmington, Del. (Nicholas E. Oglesby, Jr., Wilmington, Del., of counsel), for appellees.

Before RICH, Acting Chief Judge, MARTIN, SMITH, and ALMOND, Judges, and Judge WILLIAM H. KIRKPATRICK.[*]

RICH, Acting Chief Judge.

This appeal is from the decision of the Board of Patent Interferences awarding priority of invention to appellees Rennhard et al., the senior party, in interference No. 92,332 between Petisi et al. application serial No. 65,584, filed October 28, 1960, for "New Tetracycline Compounds," and Rennhard et al. application serial No. 847,867, filed October 22, 1959, the title of which does not appear in the record.[1]

---

[*] United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Chief Judge WORLEY, pursuant to provisions of Section 294(d), Title 28, United States Code.

[1] It appears from the record and briefs that the parties in interest are Lederle Laboratories (Petisi et al.) and Chas. Pfizer and Co. (Rennhard et al.).

During the motion period appellants, Petisi et al., moved to shift the burden of proof on the basis of three prior filed applications, only one of which—serial No. 797,884, filed March 9, 1959—was copending with the involved Petisi et al. application and is of interest here.[2] That motion was denied, the decision was adhered to on reconsideration, and a petition to the Commissioner from that decision was denied since neither manifest error nor abuse of discretion by the examiner was found. Thereupon Petisi et al. took the testimony of certain witnesses for the purpose of explaining the disclosure of the parent application and to show they were entitled, under the law of "inherency," to the March 9, 1959, filing date of that application as a date of constructive reduction to practice.

The subject matter in issue is certain tetracycline derivatives disclosed as having antibacterial activity. The single count reads (number-positions of certain carbon atoms and identification of the D-ring have been added):

A compound selected from the group consisting of

and

wherein X is a member selected from the group consisting of nitro and amino; $R_1$ is a member selected from the group consisting of hydrogen and methyl; $R_2$ is a member selected from the group consisting of hydrogen and

2. The involved Petisi et al. application is a continuation-in-part of application serial No. 797,884. These will be referred to, hereinafter, as the c-i-p and parent applications respectively, although the latter in reality is also a c-i-p, twice removed, of the first-filed application in a long series.

hydroxyl; with the provision that $R_1$ is methyl when $R_2$ is hydroxyl; and the non-toxic acid addition salts thereof.

It will be helpful for an understanding of the case to observe at this point that the count reads on two compounds in particular, 7-nitro-6-demethyl-6-deoxytetracycline and 9-nitro-6-demethyl-6-deoxytetracycline, i. e., those compounds having structures as above depicted wherein X is nitro and $R_1$ and $R_2$ are hydrogen. These will be called, hereinafter, the 7-nitro and 9-nitro compounds.

Neither party took priority testimony, the party Rennhard et al. thus being restricted to a date no earlier than March 30, 1959, the filing date of their application serial No. 802,655, referred to in their preliminary statement as "disclosing the invention set forth by the count." We are therefore presented with

the sole issue considered at final hearing: are Petisi et al. entitled to the benefit of the filing date of their parent application with regard to the subject matter defined by the count? 35 U.S.C. §§ 120, 112. More specifically, the issue is whether that parent application teaches either of the above-indicated 7-nitro and 9-nitro compounds, and thereby entitles appellants to an award of priority under the rule of Kyrides v. Andersen, 121 F.2d 514, 28 CCPA 1336, that one who is prior as to a species within a genus wins a priority award on a count to that genus.

That application begins by saying (emphasis ours):

This invention relates to new compounds of the tetracycline family and more particularly is concerned with novel tetracyclines which may be represented by the following general formula:

wherein $R_1$ and $R_2$ are H, $NO_2$, $NH_2$, CN and halogen with the proviso that $R_1$ and $R_2$ may not both be H and with the further proviso that when $R_1$ is halogen $R_2$ may not be hydrogen and vice versa, $R_3$ is H or $CH_3$ and $R_4$ is H or OH.

*Certain of the new compounds* of this invention, e. g., the nitrotetracyclines, *are prepared by the reaction of 6-demethyl-6-deoxytetracycline,* 6-deoxytetracycline or 5-hydroxy-6-deoxytetracycline *with potassium nitrate,* preferably a molar equivalent thereof, and a strong mineral acid, e. g., sulfuric acid, at a temperature ranging

from about —15° C. to about +15° C. The resulting nitrotetracycline is usually isolated from the reaction mixture as the acid sulfate by precipitation with cold ether. The free base may be obtained by adjusting an aqueous solution of the product to a pH of from about 4 to 6 with mild alkali, i. e., sodium carbonate. *The resulting product may be termed* nitro-6-deoxytetracycline, *nitro-6-demethyl-6-deoxytetracycline* or nitro-5-hydroxy-6-deoxytetracycline depending upon the starting material used.

*When 6-demethyl-6-deoxytetracycline is used* as the starting material *it*

has been found that the resulting nitration product is a mixture which can be separated into two distinct compounds by fractional crystallization. For convenience, these are referred to as nitro-6-demethyl-6-deoxytetracycline isomer (A) and nitro-6-demethyl-6-deoxytetracycline isomer (B).

A few paragraphs later, following a comparison of ultra-violet and infrared absorption spectra of "isomer (A)" and "isomer (B)," the application says:

The structure of nitro-6-demethyl-6-deoxytetracycline (A) and nitro-6-demethyl-6-deoxytetracycline (B) has not as yet been proved unequivocally, but it is believed that the two compounds are position isomers with the nitro group attached to the aromatic [D] ring of the tetracycline nucleus in the ortho position to the hydroxyl [the 9-position] in one compound and in the para position to the hydroxyl [the 7-position] in the other compound. [Emphasis ours.]

Appellants contend, as to the first above-quoted passage, that it teaches the preparation and separation of two nitro compounds, each having the structural formula there set out with $R_3$ and $R_4$ being hydrogen and one or both of $R_1$ and $R_2$ being nitro; that all that is therefore needed for complete identification of these compounds is information as to whether one or two nitro groups are present and where on the D-ring they are; and that one of ordinary skill in the chemical art would know, from a reading of this disclosure, that isomer (A) and isomer (B) are two of only six possible compounds, three mono-nitro and three di-nitro, and that, being isomers, they must constitute one of three possible pairs of mono-nitro compounds or one of three possible pairs of di-nitro compounds. They can not be one mono- and one di-, else they would not be isomers.

As to the second above-quoted passage, appellants contend that, while it is said that the structures have not been proved unequivocally, the paragraph does teach that both compounds are mono-nitro since it refers to "the nitro group."

Other teachings to those of ordinary skill in the art that isomers (A) and (B) are mono-nitro compounds can be found in the parent application, according to appellants, in some of the working examples. Example 1 describes the preparation of a crude nitration product of 6-demethyl-6-deoxytetracycline, which is separated in Example 2 into compounds (A) and (B), the latter being converted in Example 3 to its free base form, which is separated out in Example 4. The "calculated" and "found" analytical data disclosed for nitrogen compare so favorably in each of Examples 1 and 4 that the conclusion is alleged to be inescapable to one of ordinary skill that a mono-nitro compound, upon which the calculated values were based, had in fact been prepared. In addition, appellants point to the expression "920 Milligrams (2 m moles)" of nitro-6-demthyl-6-deoxytetracycline in Example 14 and contend that one of ordinary skill would reason that a mono-nitro compound was there disclosed since the molecular weight of such a compound is 460 (we compute it to be 459).

Thus, it is appellants' position that one of ordinary skill in the art would be taught by the parent specification that isomers (A) and (B) are mono-nitro-6-demethyl-6-deoxytetracyclines, and, that being so, they are entitled to an award of priority because, of the three possible pairs of mono-nitro compounds, two include either the 7-nitro or 9-nitro compound within the count, and the other pair includes both.

Appellees attack this line of reasoning, saying, in effect, that isomers (A) and (B) need not be isomeric to each other, and arguing that since the percentage of nitrogen "found" in Example 1 exceeds the "calculated" value, 8.79 vs. 8.46, that "crude" product might have been a mixture of the count-excluded 8-nitro compound and a di-nitro compound, which also of course is excluded by the count. Appellees admit that a mono-nitro compound was "probably" present in Example 4, but again emphasize that it might have been the 8-nitro com-

pound.[3] It is also contended that assignment of a molecular weight of 460 to isomer (A) "was sheer speculation" since it was not based on "actual data available in the parent Petisi application."

■ Notwithstanding these contentions, we are inclined to think appellants' reasoning sound. Be that as it may, we turn to another consideration dealing with the adequacy of disclosure in the parent application and which appears to be the crux of the position taken by the board and argued by appellees. This position is that the parent Petisi application fails to *specify unequivocally,* or to "positively identify," to quote appellees' brief, any embodiment within the interference count and therefore cannot be considered as a constructive reduction to practice thereof. While the premise in this proposition may be true, we think the conclusion derived therefrom is not valid, simply because the proposition rests upon the false assumption that such positive identification is required for a constructive reduction to practice. The reason it is not required is simply that we are concerned only with what has been taught by the parent specification to those "skilled in the art to which it pertains," 35 USC 112, and, as *to them,* a compound may well be disclosed without positive identification.

■ What we think appellants effectively said in their parent application is: "We are not absolutely certain, but *we think isomers (a) and (B) are* the 7-nitro and 9-nitro-6-demethyl-6-deoxytetracyclines." This is not a shotgun announcement, or blind speculation, but direct to-the-point disclosure of what appellants believe, without alternatives. The mere fact of its being a belief is not, of itself, fatal to appellants' case. The compounds were, we think, taught to one of ordinary skill in the chemical art.

■■ Moreover, while not necessary to our decision here, we note that appellants' belief turned out to be precisely the fact, or at least they became sufficiently convinced as to make an "unequivocal" identification of their compounds. In comparing their parent and c-i-p applications, one finds that the procedures of Examples 1 through 4, discussed above, of the parent are identical with Examples 1 through 4 in the c-i-p, and in the c-i-p application the products of those procedures are identified as the 7-nitro and 9-nitro compounds. On this basis alone, therefore, it must be concluded that, as between the parties here, appellants are the prior inventors of these two species because Examples 1 through 4 in the parent necessarily produced the same product. The *product,* not the formula or name, is the invention, and it is as to *this* that priority has been shown.

Having taken this view of the case, we find it unnecessary to consider the testimony of appellants' witnesses, or to pass on the application of the law of inherency.

The decision of the board is reversed. Reversed.

MARTIN, J., concurs in the result.

---

3. Much of the testimony of appellants' expert witnesses is to the effect that nitration of the D-ring at the "7" and "9" positions is far more likely than at the "8" position because of the presence of an "ortho and para directing group," hydroxyl, at the 10-position, but, as will appear later, we find it unnecessary to consider this testimony.