54 CCPA

**George B. SPERO, Appellant,**

v.

**Howard J. RINGOLD and George Rosenkranz, Appellees.**

**Patent Appeal No. 7681.**

United States Court of Customs and Patent Appeals.

May 25, 1967.

**654**

Eugene O. Retter, Kalamazoo, Mich., for appellant.

Evelyn K. Merker, Leon Simon, Washington, D. C., for appellees.

Before WORLEY, Chief Judge, and RICH, SMITH and ALMOND, Judges.

SMITH, Judge.

This appeal is from a decision of the Board of Patent Interferences awarding priority of invention to appellees Ringold et al., the senior party, hereinafter "Ringold." [1] The sole count in issue was suggested by the examiner to the parties for the purposes of the interference.

The subject matter in issue is best illustrated by the count which reads:

1.

wherein R is selected from the group consisting of hydrogen and lower acyl.

It will be seen that the count reads on 6α-methyl-17α-hydroxy progesterone and its lower fatty acid esters and it will be helpful to note at this time that the methyl substituent at the 6-position of the progesterone nucleus is in the so-called alpha steric orientation.

Ringold took no testimony but relied on 35 U.S.C. § 119 to secure the benefit of their prior Mexican filing date of September 8, 1956. Appellant Spero claimed the filing date of his parent application serial No. 623,774, to establish a constructive reduction to practice as of November 23, 1956. In addition, Spero took testimony and submitted various documentary records to prove conception of the invention as of August 23, 1956. The board held that Spero was entitled to the date of his parent application but that the testimony did not establish an earlier date of conception. Since the Mexican priority date of Ringold is earlier than the filing date of the Spero parent application, the board awarded priority to Ringold.

Spero here argues that the board correctly accorded him a date of constructive reduction to practice based on his parent case. Additionally, Spero contends that Exhibit 4, which was a working draft of his parent application which had been prepared by his patent agent prior to the actual filing of that application, constitutes a recorded conception of the invention in the count. Spero points out that his Exhibit 4 is identical in all pertinent respects with his parent application as actually filed. Spero also contends that the testimony establishes diligence in the period of about three months which elapsed between the alleged date of conception and the actual filing of the parent application.

Ringold's position is that Spero failed to establish a date of conception of the invention defined by the count. Ringold points out that the testimony of Spero's witness, one Dr. Berneis, an organic physical chemist who was Spero's patent agent, establishes that Spero had no conception of the 6α-methyl steroid specified in the count at the time when Exhibit 4 was prepared. Ringold's position also is that Spero's parent application is insufficient to support the count and thus cannot be relied upon to establish a date

---

1. In interference No. 89,425 between Spero application serial No. 685,391, filed September 23, 1957, and Ringold application serial No. 679,762, filed August 22, 1957.

of conception or a date of constructive reduction to practice.

Thus an initial issue for determination is whether Spero's parent application adequately discloses the 6α-methyl compounds recited in the count. Spero's parent application is concerned with 6-methylprogesterone and a process for production thereof. The 6-methyl-progesterone is disclosed as being available in both the 6α- and 6β- steric configuration. Example 5 of Spero's parent application describes a process for producing 6β- methylprogesterone. Example 5A shows a method for producing 6α-methylprogesterone, and Example 5B shows how the 6β-compound can be converted into the 6α-compound. The application also states that the 6-methyl-progesterone has utility, *inter alia*, as an intermediate in the production of 6-methyl- 17α hydroxy - 4- pregnene - 3,20 - dione (i.e., 6-methyl-17α-hydroxy-progesterone). Except for the lack of specific designation of a steric configuration for the 6-methyl substituent in the last mentioned compound, the count is directly readable on it. Example 12 of Spero's parent application shows the making of 6-methyl-17α, 21-dihydroxy-4-pregnene-3,20-dione from 6-methylprogesterone, without indicating the steric configuration of the starting material. Example 13, following immediately thereafter, shows the production of 6-methyl-17α-hydroxy-4-pregnene-3,20-dione from the product of Example 12.

It is Spero's failure to designate the steric configuration of the 6-methyl substituent on the progesterone nucleus in Examples 12 and 13 which causes the controversy in the present case.

Further complicating the picture is the testimony of witnesses called by Spero. On the one hand, Dr. Berneis testified on cross-examination that he did not designate the configuration of some of the compounds in the application because the people at the Upjohn Company (assignee of Spero) did not know the steric configuration of those compounds at the time when Spero's first application was prepared and filed. On the other hand,

a Dr. Jensen, who was a professor at the Ben May Laboratory for Cancer Research of the University of Chicago and a consultant for the Upjohn Company, testified that a skilled organic chemist would predict that the 6-methyl substituent on the product of Example 13 would assume the thermodynamically more stable orientation of the 6α-form, during the course of synthesis, regardless of whether the 6α-methyl- or the 6β-methyl-progesterone starting material was used in Example 12. In support of his testimony, Dr. Jensen cited publications bearing dates earlier than Spero's first filing date or his alleged conception date.

Thus, we have the anomalous situation presented that while the inventor may not have known the configuration of the compound produced by his process, an expert in the art testified that the compound necessarily has the predictable configuration which meets the count.

In awarding a constructive reduction to practice to Spero on the basis of his parent application, the board found the disclosures in the application adequately supported the 6α-methyl limitation of the count in view of "what the application as a whole *communicates* to one skilled in the art." In re Nelson, 280 F.2d 172, 184, 47 CCPA 1031, 1048. The board's view was that "one skilled in the art, here the steroid chemist, would be taught by the disclosure that Example 12 may be practiced with either one of the precursors of Examples 5, 5A and 5B." The board also concluded that "the steroid chemist on reading the application would readily preceive—that is, it is obvious—that 6-methyl is generic to the 6α- and 6β-methyl." In addition, the board stated:

> Since the count demands the 6α-methyl limitation the 6β-methyl progesterone precursor is automatically eliminated in practicing the process of Example 12. This leaves only the 6α-methyl progesterone precursor to be used in the process of Example 12. In short, we believe it would be obvious to the steroid chemist from the teachings of the disclosure to employ the 6α-methyl progesterone precursor in carrying out

the process of Example 12, from which, by following Example 13, a compound is produced which satisfies the count.

The board also found that testimony taken by Spero shows that use of the 6α-methyl progesterone precursor in Example 12 inherently produces a 6α-methyl compound within the count. Therefore, the board found that the count is inherently disclosed in serial No. 623,774, In re Nathan, 328 F.2d 1005, 51 CCPA 1059. However, the board refused to accept Spero's Exhibit 4 as proof of an earlier date of conception. While the board apparently assumed Exhibit 4 to be identical with Spero's parent application, it nevertheless concluded that the exhibit failed to establish a date of conception because it "does not disclose the invention." The board refused to accept the testimony that the disclosure in the parent application inherently disclosed the invention as claimed in the count as proof of conception. Exhibit 4, according to the board, amounted to a defective "nunc pro tunc conception." Heard v. Burton, 333 F.2d 239, 51 CCPA 1502.

■ For reasons to be hereinafter stated, we are of the view that the board erred in concluding, as a matter of law, that identical disclosures may be sufficient to establish constructive reduction to practice of the subject matter of a count in interference when present in a filed application yet insufficient to establish conception when present in a working draft of that application.

■ We are in agreement with the board as to the test it applied to the disclosures of the parent application. We agree that they adequately support the 6α-methyl limitation of the count. As we recently stated in Petisi v. Rennhard, 363 F.2d 903, 53 CCPA 1452, the question of adequacy of disclosure in a parent application for the subject matter in a count in an interference is to be determined by:

[W]hat has been taught by the parent specification to those "skilled in the art to which it pertains," 35 U.S.C. § 112, and, as *to them,* a compound may well be disclosed without positive identification.

Spero's parent application does not state the steric configuration of the 6-methyl substituent of the starting material in Example 12. It also fails to specifically name the orientation of the 6-methyl substituent in the product of Example 13. However, we agree with the board that the 6-methyl progesterone, employed as the starting material in Example 12, is generic to both 6α-methyl and 6β-methyl progesterones. We are thus faced with the question of whether Examples 12 and 13 can be construed as sufficient support for the use of either 6α-methyl progesterone or 6β-methyl progesterone in the procedure outlined in these examples. We are of the opinion that the testimony on behalf of Spero has established that Examples 12 and 13 are sufficient to teach one skilled in this art the use of *either* 6α-methyl or 6β-methyl progesterones as the starting material.

■ The inclusion of broad language in the disclosure may afford a proper basis for limited claims. This, however, is a question which must be determined on the basis of the particular circumstances of each case. Cf. In re Shokal, 242 F.2d 771, 44 CCPA 854.

Accordingly, we will now consider the facts of record. Examples 5 and 5A of Spero's parent application show the methods of preparing 6β-methyl progesterone and 6α-methyl progesterone, respectively. In later examples in that application, the steric configuration of the 6-methyl substituent of the 6-methyl progesterone is not specifically stated. According to the testimony of Dr. Berneis, the starting material for Example 12 is stated to be 6-methyl progesterone to indicate that either 6α-methyl or 6β-methyl progesterone may be used. It was his understanding that the term "6-methyl progesterone" would suggest immediately that the starting material should be selected from those previously disclosed in Examples 5 and 5A. In view of the clarity of the disclosure in these examples with respect to the preparation of the 6α-methyl and 6β-methyl progesterones, we

agree with the board that "one skilled in the art, here the steroid chemist, would be taught by the disclosure that Example 12 may be practiced with either one of the precursors of Examples 5, 5A and 5B."

There is no dispute that the disclosed product of Example 13 of Spero's parent application is a species of the material designated in the count except for the lack of a recital as to the steric designation for the 6-methyl substituent. Spero attempted to overcome this deficiency by: 1) the testimony of one Lincoln, a research chemist in Upjohn's employ, who stated that when Examples 12 and 13 are practiced with either 6α-methyl progesterone or 6β-methyl progesterone starting materials, the product obtained always contains 6α-methyl-17α-hydroxy-progesterone; and 2) the testimony of Professor Jensen who stated that the procedure of Examples 12 and 13 would necessarily produce the 6α-methyl product whether 6α- or 6β-starting material was used. The stated reason for this being that the α- orientation is thermodynamically more stable than the β- orientation so that during the course of synthesis the 6-methyl substituent would assume the more stable position.

■ We are not inclined to accord controlling weight to Professor Jensen's testimony in view of Dr. Berneis' conclusion that appellant was not sure "which exact compound he would get" from the method of synthesis disclosed in some of the examples. Thus it appears that appellant himself, presumably a man of ordinary skill in the art, did not know at the time of the preparation of Exhibit 4 the exact configuration of his product. Dr. Jensen's testimony to the effect that one skilled in the art could predict the steric configuration of the product of appellant's Example 13 does not overcome the effect of the concession made by Dr.

Berneis. Cf. Abington Textile Machinery Works v. Carding Specialists (Canada) Ltd., 249 F.Supp. 823, 829 (D. D.C.1965).

Turning now to the testimony of Lincoln, we believe appellant's contention with respect thereto has substantial merit. Lincoln testified that he performed or had carried out under Spero's direction two sets of experiments, both following the procedure of Examples 12 and 13.[2] Lincoln used 6α-methyl progesterone as the starting material in one experiment and 6β-methyl progesterone in the other. The testimony shows that 6α-methyl-17α-hydroxy-progesterone is always present in the end product regardless of the starting material employed. In view of this testimony we agree with the board's conclusion that the procedures set forth in Examples 12 and 13 would inherently produce the 6α-methyl compound of the count. In re Magerlein, 346 F.2d 609, 52 CCPA 1637. See also In re Nathan, 328 F.2d 1005, 51 CCPA 1059.

The appellees contend, however, that *Magerlein* and *Nathan* are not applicable to the present situation because Spero's parent application lacks identifying characteristics for the product produced by the processes described in Examples 12 and 13. We find this contention to be based on an erroneous understanding of the facts in the Magerlein case. In that case, there was an application disclosing certain 16-hydroxy steroids and a process for preparing them. The application as filed did not disclose the steric configuration of the 16-hydroxy substituent. Thereafter, an amendment was filed in an attempt to amend the specification and claims to indicate that the 16-hydroxy substituent had the alpha orientation. The examiner rejected the claims as containing new matter and one of the applicants submitted an affidavit under Rule 132 comparing the product of

---

**2.** Lincoln's experiments followed generally the procedure of Examples 12 and 13 but with some deviations therefrom. Both Lincoln and Jensen testified that these deviations are immaterial for the purposes herein. The board apparently agreed with Lincoln and Jensen since it concluded that the testimony taken by Spero shows that use of the 6α-methyl progesterone precursor in Examples 12 and 13 inherently produces a 6α-methyl compound of the count.

the process disclosed in the application with a compound having known 16α configuration and referred to as the Bernstein et al. compound. The board in the *Magerlein* case apparently thought it unnecessary to consider the merits of the affidavit since "it was based on the work of another subsequent to the filing date of the application." This court considered the board's position in *Magerlein* not to be sound in view of the statement in *Nathan*, 328 F.2d at 1008, 51 CCPA at 1062:

> It seems to us that the issue here is whether appellants' identification of their 2-halo steroids in their original disclosure is adequate to identify the claimed subject matter and whether there is sufficient evidence in the record to show the alpha orientation to be an inherent characteristic of the subject matter so identified. If the answers are in the affirmative then appellants' amendment specifying the alpha orientation for the 2-halo substituent is not new matter but rather is merely a statement of an inherent property of the steroids as disclosed in appellants' original disclosure.

The appellees also contend that Spero's parent application is insufficient to support the count since there is nothing in that application to show the specific 6α-methyl compounds of the count. It is the appellees' contention that the testimony to establish inherency of the count cannot be considered as a contemporary evaluation of the written description of that application inasmuch as the experiments carried out to show inherency were not performed until six years after filing of the application. We find this contention to be without merit since, in our opinion, the facts herein are clearly similar to those in *Magerlein*. Appellees further contend that the *Magerlein* case is not applicable to the present facts, stating in their brief:

> But, unlike the cases of In re Nathan et al. and In re Magerlein et al., the Schneider and Spero application lacked any identifying physical characteristics for Examples 12 and 13 so that

the compounds could be identified apart from the method of making it. As stated by the United States Supreme Court in Cochrane et al. v. Badische Anilin and Soda Fabrik, 111 U.S. 293 [4 S.Ct. 455, 28 L.Ed. 433], 1884 C.D. 230:

> "Every patent for a product or composition of matter must identify it so that it can be recognized aside from the description of the process for making it, or else nothing can be held to infringe the patent which is not made by that process."

We do not agree with the above contention since in the present case, as in *Magerlein*, the chemical name of the product claimed was stated in the application as filed, the only deficiency being a specific statement as to the steric configuration of a substituent. This was exactly the situation in *Magerlein*. In addition, we note that in *Magerlein* the identifying physical characteristics were also submitted after the application was filed.

The passage appellees have quoted from the Supreme Court's opinion in the *Cochrane* case is quoted out of context and is not applicable to the present situation. The *Cochrane* case involved a patent claiming "[A]rtificial alizarine, produced from anthracine or its derivatives by either of the methods herein described, or by any other method which will produce a like result." 111 U.S. at 296, 4 S.Ct. at 456. That patent apparently contained no identifying physical characteristics of the claimed product. The alleged infringing article was made by a process different from that disclosed in the patent. Furthermore, it appears that alizarine, as then understood, had the chemical formula $C_{14}H_{8}O_{4}$, which is not the same as the formula of the alleged infringing article. These facts underlie the statement of the Supreme Court, 111 U.S. at 310, 4 S.Ct. at 464, that:

> If the words of the claim "by any other method which will produce a like result" mean any other method which will produce the only product mention-

ed in the description, namely, alizarine, as then understood, having the formula $C_{14}H_{8}O_{4}$, the defendant's article is not that product, for it contains other dyeing ingredients which the alizarine of the patent does not contain. If the words of the claim are to be construed to cover all artificial alizarine, whatever its ingredients, produced from anthracine or its derivatives by methods invented since Graebe and Liebermann invented the bromine process, we then have a patent for a product or composition of matter, which gives no information as to how it is to be identified. Every patent for a product or composition of matter must identify it so that it can be recognized aside from the description of the process for making it, or else nothing can be held to infringe the patent which is not made by that process.

Clearly, the facts in the present case are similar to those found in *Magerlein* but are entirely different from those involved in the *Cochrane* case.

▮ In view of the above, we find no error in the board's conclusion that Spero's parent application adequately supports a constructive reduction to practice of the subject matter of the count.

▮ As indicated above, the filing date for Spero's parent application is later than appellees' Mexican priority date by a period of about 2½ months. To prevail it is necessary for appellant to prove a date of conception prior to appellees' Mexican priority date. Exhibit 4, the working draft of Spero's parent application, is the key evidence relied on by appellant. In addition to the exhibit itself, appellant has submitted testimony to show the date on which the pertinent portions of Exhibit 4 were written. Furthermore, to prevail appellant must establish reasonable diligence from a time prior to appellees' priority date until the filing date of appellant's application. 35 U.S.C. § 102(g).

The board in its third decision in this case, in holding that Exhibit 4 is in-

sufficient as proof of a date of conception of the invention stated:

Whether or not Exhibit 4 is "identical" with the first filed Spero application, Serial No. 623,774 (Exhibit 6) —Ringold et al assert the two are not identical—is immaterial in the views of the case we have taken.

Spero is confusing two different principles of patent interference law; namely, (1) conception and (2) inherency in an application to establish the application as a constructive reduction to practice. He is seeking to apply the law governing the establishing of inherency in an application *by suitable evidence* to obtain the benefit of a constructive reduction to practice, to an exhibit (Exhibit 4) which does not disclose the invention and so would fall as a conception. In the instant case, the evidence to establish inherency in the first filed Spero application was filed in March 1963, about 6½ years after the filing of that application in this Office. This evidence —testimony and documentary exhibits —was presented in accordance with the practice set forth in the authorities cited on page 11 of our initial opinion.

This testimony cannot be used to prove conception via Exhibit 4 because it is in direct conflict with the controlling law in this issue; see the treatment of conception on pages 2 to 4 of our Supplemental opinion. See also the case Heard v. Burton et al (CCPA), [333 F.2d 239, 51 CCPA 1502] 142 USPQ 97, where the subject of conception is treated at length.

As stated in the Heard case, supra, a nunc pro tunc reduction to practice is defective. By the same token the law would not recognize a nunc pro tunc conception, if such a concept existed in our patent law. Spero has cited no authority for his position. We know of none.

The board's opinion with respect to the issue of conception appears to us to be inconsistent with its decision on the issue of constructive reduction to prac-

tice. Briefly, what the board seems to be holding is that *identical disclosures* may be sufficient to establish a constructive reduction to practice when present in a filed application but are inadequate to establish a date of conception of the same invention when present in an unfiled draft of the same application.

■ We fail to see why the act of filing an application to entitle an applicant to a date of constructive reduction to practice imparts anything more to the disclosure contained therein than a procedural advantage. It cannot and does not *change the import of the disclosure.* On the instant before filing, the disclosure teaches no more and no less than it does on the instant after filing. Thus, if the application as filed discloses the invention in issue, as the board has here assumed that it does, it seems inconsistent to deny the *same effect* to the *same disclosures* in a prior but unfiled draft of the same application.

■ As evidence of conception, the working draft of the Spero parent application seems to us to be probative of Spero's conception of the invention in issue and, as such, may corroborate the other evidence on behalf of Spero. As such evidence, it must be adjudged on the objective standard as to what it teaches a person of ordinary skill in the art. Thus we have stated in Townsend v. Smith, 36 F.2d 292, 17 CCPA 647:

> A complete conception as defined in an issue of priority of invention is a matter of fact, and must be clearly established by proof. The conception of the invention consists in the complete performance of the mental part of the inventive act. All that remains to be accomplished in order to perfect the act or instrument belongs to the department of construction, not invention. It is therefore the formation in the mind of the inventor of a definite and permanent idea of the complete and operative invention as it is thereafter to be applied in practice that constitutes an available conception

within the meaning of the patent law. *A priority of conception is established when the invention is made sufficiently plain to enable those skilled in the art to understand it.* [Emphasis added.]

■ Since the conception of an invention is a mental act, known only to its originator, it follows that it must be proven by evidence showing what the inventor has disclosed to others and what that disclosure means to one of ordinary skill in the art. In this light, the standard for proving conception is not essentially different from that required for proving reduction to practice or adequacy of support in a disclosure for a claim. In all these cases, the proof of disclosure by the inventor must be interpreted in light of what it means to a person of ordinary skill in the art.

■ We find that appellant's parent application as filed establishes both a conception and a constructive reduction of the invention as of its filing date. The board's decision in this case did not require it to pass on several issues which, in view of our disposition of this appeal, must be considered, 35 U.S.C. § 102(g). Among these issues are the sufficiency of Exhibit 4 to support conception, the date of such conception and Spero's diligence. Accordingly, we *remand* the case to the board for further proceeding not inconsistent with this opinion.

■ While the record in this case was being prepared by the Patent Office for filing herein, the appellees filed a praecipe in the Office requesting that additional material be included in the record. Appellant then filed a motion in this court for an order to assess the cost of printing such additional material, which motion was deferred until final disposition of the appeal. We find that the additional material was unnecessary to the decision in this case and we therefore assess the costs of printing it against the appellees.

Reversed and remanded.

WORLEY, C. J., did not participate.