**TECHNICON INSTRUMENTS CORPO-
RATION, Plaintiff-Appellee,**

v.

**COLEMAN INSTRUMENTS CORPORA-
TION and American Hospital Supply
Corporation, Defendants-Appellants.**

**No. 15822.**

United States Court of Appeals
Seventh Circuit.

Oct. 10, 1967.

George B. Newitt, Sheldon W. Witcoff,
Bair, Freeman & Molinare, Chicago, Ill.,
for defendants-appellants.

Homer J. Schneider, Gerald Rose, Chi-
cago, Ill., for plaintiff-appellee, Harry
Cohen, New York City, of counsel.

Before DUFFY, Senior Circuit Judge,
and CASTLE and KILEY, Circuit
Judges.

DUFFY, Senior Circuit Judge.

The complaint herein alleges infringe-
ment of four United States patents owned
by plaintiff. Each defendant counter-
claims for a declaratory judgment of in-
validity and non-infringement. Only two
of the patents are involved in this appeal,
viz., Skeggs United States Patent No.

2,797,149 and Skeggs United States Patent No. 2,879,141.

On this appeal, appellants contest only the trial court's holding that 1) Claims 4, 14, 16 and 19 of Skeggs Patent No. 2,797,149 (the '149 patent) are infringed; 2) Claim 10 of Skeggs Patent No. 2,879,141 (the '141 patent) is infringed; and 3) Claim 16 of the '141 patent is valid.

The patents in suit involve apparatus that analyzes, on a continuous basis, samples of various liquids to determine the quantity of certain constituents in these liquids. To illustrate, the apparatus is useful in determining the amount of sugar or urea (crystalloids) present in human blood.

Skeggs United States Patent '149 contains apparatus claims 4, 14 and 16, and method claim 19 directed to an entire system for quantitative automatic analysis of crystalloids using flowing streams.

In Skeggs United States Patent '141, Claim 10 is directed to a sampling device for feeding a series of liquid samples successively to the apparatus disclosed in the '149 patent. Claim 16 of that patent is directed to apparatus for treating a liquid for processing which employs means for injecting air into a stream of the liquid to divide the stream into alternate segments of liquid separated from each other by intervening segments of air. Claim 16 is sometimes referred to as "the Air Bubble claim."

The inventions represented by the four patents in suit have been embodied in commercial apparatus sold by plaintiff as the "AutoAnalyzer" analytical equipment.

Defendants Coleman and American Hospital Supply Corporation are charged to have infringed plaintiff's patents by reason of the manufacture and use of an analytical apparatus called the "Coleman Chem-Matic."

Pertinent to the question of infringement, there is substantial evidence in the record to support Finding of Fact 33 which reads: "Coleman surreptitiously bought an AutoAnalyzer through one of its consultants who made the purchase in the name of the hospital with which he was affiliated. The consultant arranged for one of Coleman's engineers to spend a week at the hospital learning how its AutoAnalyzer operated, and took the new AutoAnalyzer to Coleman's laboratory, where it became the basis of the Coleman design."

Prior to the Skeggs inventions, body fluids such as blood, had customarily been analyzed for diagnostically significant factors by manual methods. These required a sequence of many operations and involved careful weighing or measurements together with record keeping. The trial court pointed out that such methods were time-consuming, subject to error, and that manual analyses required frequent cleaning of equipment.

Patentee Skeggs was a research biochemist and had responsibility for the clinical chemistry laboratory in a hospital where colorimetric tests of blood samples for diagnostically significant factors were performed manually. He became interested in the possibility of automatic analysis of body fluids.

In the analysis of body fluids, whether made manually or automatically, it usually is necessary, as a preliminary to the final determination, to separate dissolved components (crystalloids) that are to be analyzed from suspended components (non-crystalloids) such as colloidal proteins, corpuscles and the like. A chemical reagent of a type that changes color in the presence of one of the dissolved components is then mixed with the dissolved components, and the resulting color change is determined. The color change is an indication of the original concentration of the dissolved component in the body fluid sample.

The trial court found "Skeggs * * * conceived and reduced to successful practice the first practical system for the automatic analysis of body fluids for diagnostically significant substances."

The trial court also found " * * * Skeggs accidentally discovered that samples could be analyzed many times more rapidly and with less contamination be-

tween samples by introducing an air bubble between successive samples." A demonstration of this use was given in the courtroom.

Plaintiff's AutoAnalyzer was promptly recognized by clinical pathologists and clinical chemists as a reliable and valuable tool, and they began using it to replace the manual tests and to extend the scope and quantity of analyses.

The trial court pointed out that diagnostic information could thus be supplied more promptly to physicians and with less likelihood of error. Also, important labor savings had been achieved by its use.

The trial court also found the "Auto-Analyzer has had a dramatic impact on the improvement of health services to the public. Because of the AutoAnalyzer's ability to provide rapid, accurate and low cost analyses, physicians have been able to institute routine screening programs of supposedly healthy patients. This has led to the detection of numerous unsuspected cases of diabetes and kidney disfunctions."

The trial court also found that the AutoAnalyzer was an overwhelming commercial success; that more than 6000 AutoAnalyzers have been sold; that three fourths of all American hospitals having over 200 beds, use at least one AutoAnalyzer.

■ Perhaps the issue most vigorously argued on this appeal is the questioned validity of Claim 16 of the '141 patent. The controversy involves the question of whether Claim 16 (the air bubble claim) is entitled under 35 U.S.C. § 120 to the benefit of the earlier filing date of the co-pending '149 patent.

■ To come within the purview of 35 U.S.C. § 120, the following qualifications must be met by the later patent application. 1) The same invention must be disclosed. 2) It must be by the same inventor. 3) It must be filed before patenting of the first application. 4) It must contain a specific reference to the earlier-filed application. If the condi-

tions are met, the effective filing date of the later application is that of the earlier application. Armour & Co. v. Wilson & Co. Inc., 274 F.2d 143, 148–149 (7 Cir., 1960); Crown Cork and Seal Co. v. Ferdinand Gutmann & Co., 304 U.S. 159, 165, 58 S.Ct. 842, 82 L.Ed. 1265 (1938); General Talking Pictures Corp. v. Western Electric Co., 304 U.S. 175, 183, 58 S.Ct. 849, 82 L.Ed. 1273 (1938). The District Court found that all conditions had been met. An analysis of the District Court's decision supports its reasoning.

■ The controversy centers around the problem whether the air bubble claim is disclosed in the earlier '149 application and in the later '141 application. The record shows that on cross-examination at the trial, the defendants' patent expert agreed that the air bubble claim is disclosed in the '149 application. In the face of their own expert's testimony, defendants contend that plaintiff introduced "new matter" in the '141 application. The revisions of the '141 specification are not "new matter" within the meaning of the Patent Office Rule 67 or 35 U.S.C. § 132. The Patent Office did not deem it "new matter." It was satisfied. Their finding should be given "special weight." Helms Products, Inc. v. Lake Shore Mfg. Co., Inc., 227 F.2d 677, 679 (7 Cir., 1955).

■ Defendants overlook the rule which provides that amendments to further explain or claim what is disclosed in an earlier application are permissible. Aerosol Research Co. v. Scovill Mfg. Co., 334 F.2d 751, 756 (7 Cir., 1964); Binks Mfg. Co. v. Ransburg Electro-Coating Corp., 281 F.2d 252, 257 (7 Cir., 1960), cert. granted 364 U.S. 926, 81 S.Ct. 353, 5 L.Ed.2d 265, writ dismissed 366 U.S. 211, 81 S.Ct. 1091, 6 L.Ed.2d 239. Claim 16 of the '141 application falls within the scope of this rule. Since the District Court's findings of fact are not clearly erroneous in this respect, they should be affirmed.

It may be conceded that the invention defined in Claim 16 of the Skeggs '141

patent was in public use, on sale and published more than one year before the Skeggs '141 application was filed. However, it was not in public use or on public sale or published more than one year before the earlier Skeggs '149 application was filed. Both applications, filed by the same inventor, disclosed the invention of this claim. The '141 application was filed before the '149 application issued as a patent, and the '141 patent application contains a specific reference to the '149 application. We therefore hold that the District Court's determination that Claim 16 is valid, is correct.

The Skeggs analytical system can be operated without air bubbles but this would be a less speedy operation. Skeggs analytical system and the use of air bubbles are, in fact, two separate inventions. Furthermore, the '149 patent and the '141 patent expire at the same time as plaintiff has filed a terminal disclaimer.

Defendants also claim the air bubble concept was not new with Skeggs. However, the prior art cited by defendants does not suggest the use of bubbles for any function similar to that of Skeggs. The book Quantitative Organic Microanalysis by Pregl (Blakiston Co., 1951) suggested the use of air bubbles as a substitute for a pump to lift a fluid.

Defendants rely on Alston et al. United States Patent No. 2,408,900 to show invalidity of the claims here in issue. The Alston patent is the closest prior art cited by defendants. However, this reference was cited in the Patent Office and was overcome during the prosecution of the two Skeggs patents here in issue. The Alston device was incapable of analyzing body fluids.

Defendants repeatedly state that what Skeggs disclosed in his '149 patent was a dializer as a separating means. However, dializers were invented long before Skeggs was born. Simply stated, a dializer is a semi-permeable membrane, that is, a sheet of material having molecularsized holes or pores. Cellophane is an example. Dializers separate dissolved crystalloid molecules from larger noncrystalloid particles such as the proteins in body fluids.

While Skeggs did not invent dializers, he did invent a proportional flow analyzer system, and he disclosed a continuous dializer as the proportional separating element of the combination.

The trial court made findings of fact that the accused Chem-Matic responds literally to the claims and does the same work in substantially the same manner and produces the same results as the system disclosed in the '149 patent.

Section 35 U.S.C. § 112 provides that patent claims are to be construed to cover not only what is disclosed in the specification but also "equivalents thereof." Defendants argue that as the Skeggs inventions must be limited to the dializer, the doctrine of equivalents does not apply. We disagree. Defendants' premises are wrong as we have hereinbefore indicated. We hold the District Court correctly applied the doctrine of equivalents.

Defendants have made several contentions which we have considered. To discuss each of these points in detail would unduly extend the length of this opinion. Suffice it to say, the air bubble invention, in our view, was not obvious to one skilled in the art, nor were any of the other claims in issue.

██ The decision of the trial court holding Claims 4, 14, 16 and 19 of United States Patent No. 2,797,149 and Claims 10 and 16 of United States Patent No. 2,879,141 to be valid and infringed is

Affirmed.