**KENNECOTT CORPORATION,**
**Plaintiff–Appellant,**

**v.**

**KYOCERA INTERNATIONAL, INC.**
**and Kyoto Ceramic Co., Ltd.,**
**Defendant–Appellee.**

No. 87–1151.

United States Court of Appeals,
Federal Circuit.

Dec. 22, 1987.

Clyde F. Willian, Willian Brinks Olds Hofer Gilson & Lione, Ltd., Chicago, Ill., argued, for plaintiff-appellant. With him on the brief, were Jack C. Berenzweig and Raymond W. Green.

Paul L. Gardner, Spensly Horn Jubas & Lubitz, Los Angeles, Cal., argued, for defendant-appellee. With him on the brief, were Stuart Lubitz, Saul Epstein and David Henty.

Before MARKEY, Chief Judge, DAVIS, and NEWMAN, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

Kennecott Corporation appeals the final judgment of the United States District Court for the Southern District of California,[1] in which the district court granted summary judgment to the defendants Kyocera International and Kyoto Ceramic Co., Ltd. (together "Kyocera"), holding that United States Patent No. 4,179,299 ("the '299 patent") is invalid in terms of the "on sale" bar of 35 U.S.C. § 102(b). Kennecott's claim of patent infringement was dismissed. We reverse.

### The Controlling Question

The judgment of invalidity turned on the sole question of whether the claims of the '299 patent are entitled, as a matter of law, to the benefit of the filing date of its parent patent application which eventually issued as U.S. Patent No. 4,312,954 ("the '954 application"), filed on June 5, 1975. If so entitled, the sales events in 1977 can not effect an invalidity bar. If not so entitled, Kennecott admits that its sales activities occurred more than one year before May 1, 1978, the filing date of the continuation-in-part application that issued as the '299 patent.

1. *Kennecott Corporation v. Kyocera International, Inc. and Kyoto Ceramic Co., Ltd.,* No. 80–0516 R(M) (S.D.C. Dec. 17, 1986).

*Background*

On summary judgment all facts material to the result must be either undisputed or, if disputed, must be resolved in favor of the party opposing summary judgment. *Litton Industrial Products, Inc. v. Solid State Systems Corp.*, 755 F.2d 158, 163, 225 USPQ 34, 37 (Fed.Cir.1985). Rule 56, Fed.R.Civ.Proc. The question of the sufficiency of the disclosure of the '954 application to support the '299 claims is a matter of law based on underlying facts. All facts material to the issue are here deemed undisputed, based on admissions by Kyocera for the purpose of its motion for summary judgment.

Kyocera states in its brief on appeal that it did not concede or admit all the facts that Kennecott says it did. The district court found, however, that:

> Finding 11. For the purposes of this Motion only, the material facts set forth in all of the affidavits and in all of the exhibits submitted by plaintiff in opposition to Defendants' Motion, are undisputed by defendants.

Kyocera has not assigned error to this finding, and it is bound thereby.

The continuation-in-part '299 application contains a substantial part of the disclosure of the '954 parent application, plus a description of and photomicrographs showing the equiaxed microstructure.[2] It is not disputed that the photomicrographs were of the product made and described in the '954 application, and produced in the original examples.

The '299 patent claims contain the words "equiaxed microstructure" that were not present in the '954 specification and claims. This is the only difference at issue. '299 patent claim 1 is representative:

> 1. A sintered ceramic body consisting essentially of:
>
> (a) from about 91 to about 99.85% by weight silicon carbide, wherein at least

95% by weight of the silicon carbide is of the alpha phase;

(b) up to about 5.0% by weight carbonized organic material;

(c) from about 0.15 to about 3.0% by weight boron; and

(d) up to about 1.0% by weight additional carbon;

and having a predominantly equiaxed microstructure.

Pertinent undisputed or conceded facts include the following:

the high (over 95%) alpha silicon carbide ceramic body that is described in the '954 application has an equiaxed microstructure;

the '954 application does not mention the equiaxed microstructure of the high-alpha silicon carbide ceramic body, nor state the requirements for forming such microstructure;

the inventors knew that the high-alpha silicon carbide ceramic body had an equiaxed microstructure, and it was known that ceramics from high-alpha silicon carbide could have this structure;

examples 1–30 in the '954 application, all the examples using high-alpha silicon carbide, all produce a ceramic body having an equiaxed microstructure;

the method set forth in the '954 application using the high-alpha silicon carbide invariably produces a ceramic product having an equiaxed microstructure.

Kennecott asserts that the equiaxed microstructure is inherent in the structure produced in the '954 application, and that the '299 claims, which specifically name the equiaxed structure, therefore enjoy the benefit of the earlier filing date. Kennecott also asserts, and Kyocera denies, that Kyocera conceded the question of inherency in the course of conceding all disputed facts on its motion for summary judgment.

It is apparent that Kyocera conceded the factual premises [3] of inherency by con-

---

2. "Equiaxed microstructure" is the crystal structure of the silicon carbide in submicron size grains that are not highly elongated and that do not have exaggerated grain growth. As defined in the '299 patent the ratio of the maximum

dimension of the grains to the minimum dimension is less than 3:1.

3. Kyocera raises on this appeal factual issues that appear to contradict its concessions before the district court, including issues related to

ceding that examples 1–30 produced, without undue experimentation, a product having an equiaxed microstructure. What is disputed is the legal implication of this inherent production of an equiaxed product.

The district court concluded that for the '954 specification to meet the written description requirement, one reading the specification must know from the "four corners" of the document, without recourse to information outside the specification, that the ceramic product has an equiaxed microstructure. The district court held that the specification of the '954 application met the enablement requirement of section 112 but not the written description requirement, and thus that it was immaterial that the product disclosed in the '954 application was the same as that claimed in the '299 patent.

### Discussion

For the '299 claims to receive the benefit of the '954 application's filing date, 35 U.S.C. § 120 requires, inter alia, that the invention of the claims be disclosed in the '954 specification in the manner required by 35 U.S.C. § 112, first paragraph, which provides:

§ 112 ¶ 1: The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

The purpose of section 112, first paragraph, is to ensure that there is an adequate disclosure of the invention for which patent rights are sought. The purpose of the description requirement of this paragraph is to state what is needed to fulfil the enablement criteria. These requirements may be viewed separately, but they are intertwined.

The incorporation of the requirements of section 112 into section 120 ensures that the inventor had possession of the later-claimed invention on the filing date of the earlier application. *In re Edwards,* 568 F.2d 1349, 1351, 196 USPQ 465, 467 (CCPA 1978). The written description must communicate that which is needed to enable the skilled artisan to make and use the claimed invention. A description that does not meet this requirement is legally insufficient. *In re Wilder,* 736 F.2d 1516, 1520, 222 USPQ 369, 372 (Fed.Cir.1984), *cert. denied,* 469 U.S. 1209, 105 S.Ct. 1173, 84 L.Ed.2d 323 (1985).

It was undisputed that the only written description in the '299 application that was not present in the original '954 disclosure was the description and pictures of the product's microstructure. Kennecott points to authority that the added description of a property of a previously disclosed product does not deprive claims to that product of the benefit of a prior disclosure of the product. Kyocera responds that because the '954 specification is silent as to the microstructure of the product, and because one would not know whether the product had an equiaxed microstructure merely by reading the specification, the specification is inadequate in law to support claims that require an equiaxed microstructure. Kyocera also asserts that the equiaxed microstructure is not obtained without physical manipulation of the process of the '954 application, and that any concession it may have made as to production of an equiaxed product is limited to the specific conditions used in examples 1–30 of the '954 specification.

Taking the last contention first, it was admitted that the products of examples 1–30 have the equiaxed microstructure, and that one skilled in this art could readily determine the microstructure of the product. Kyocera's arguments on appeal as to the need for manipulation of conditions are contravened in the affidavit evidence referred to in Finding of Fact 11,

Kennecott's representations to the patent examiner in prosecuting the '299 application. However, it is too late in the proceeding for Kyocera

to retreat from its blanket concession of the factual issues.

*supra.* We conclude that it was established before the district court that the high-alpha products of the '954 application have the equiaxed microstructure.

On the issue of sufficiency of the earlier disclosure, the body of precedent teaches that the legal conclusion depends on the particular facts. In *In re Edwards* the court considered a chemical compound that was not described in the earlier application, and stated that the earlier and later applications need not use the identical words, if the earlier application shows the subject matter that is claimed in the later application, with adequate direction as to how to obtain it. The court observed that the chemical reactions described in the earlier filing "will inherently produce, as the predominant component, the [later claimed] compound". 568 F.2d at 1352, 196 USPQ at 467. The facts in *Edwards* are strongly analogous to those herein, for Kennecott's '954 examples 1–30 all produce a ceramic that has an equiaxed structure.

The facts before us are not like those discussed in *In re Ruschig*, 379 F.2d 990, 154 USPQ 118 (CCPA 1967), referred to by the district court, but are analogous to those discussed in *In re Reynolds*, 443 F.2d 384, 170 USPQ 94 (CCPA 1971). In *Reynolds* the question was whether words describing a function that was inherent in the claimed product could be added to the specification by amendment, or whether such description was "new matter". The court cited with approval the holding in *Technicon Instruments Corp. v. Coleman Instruments, Inc.*, 255 F.Supp. 630, 640–41, 150 USPQ 227, 236 (N.D.Ill.1966), *aff'd*, 385 F.2d 391, 155 USPQ 369 (7th Cir.1967), that:

> By disclosing in a patent application a device that inherently performs a function, operates according to a theory, or has an advantage, a patent applicant necessarily discloses that function, theory, or advantage even though he says nothing concerning it.

*Quoted at* 443 F.2d at 389, 170 USPQ at 98. It was concluded that the express description of the inherent property, since not "new matter", could be added to the specification with effect as of the original filing date.

The Court of Customs and Patent Appeals has long recognized that an invention may be described in different ways and still be the same invention. In *In re Kirchner*, 305 F.2d 897, 904, 134 USPQ 324, 330 (CCPA 1962), the court held that compliance with section 120

> does not require that the invention be described in the same way, or comply with section 112 in the same way, in both applications.

*Id.* In *Kirchner* the court authorized the addition to the specification of descriptive matter concerning the use of the compounds without loss of the parent application's filing date. In the '299 patent, by contrast, the additional material was added not only to the specification, but to the claims. Thus Kyocera argues that it is immaterial that the product in the '299 claims is inherently the same as that produced in the '954 application, because unlike *Kirchner* the '299 claims include the new descriptive matter.

The Court of Customs and Patent Appeals did not adopt the position that is now urged by Kyocera. In *In re Nathan*, 328 F.2d 1005, 1008–09, 140 USPQ 601, 604 (CCPA 1964), the court held that the later-added limitation to the claims of the compound's alpha orientation was "an inherent characteristic" of the claimed subject matter, and reversed a new matter rejection. The *Nathan* court explained that "a subsequent clarification of or a change in an original disclosure does not necessarily make that original disclosure fatally defective." *Id.* at 1008, 140 USPQ at 603.

Kennecott argues that Kyocera is pressing the position rejected in *Kirchner*, wherein the court cautioned that it is necessary to avoid confusing "the invention itself which is the subject matter claimed ... with one of the factors which is taken into consideration in determining whether the invention is or is not patentable from the standpoint of meeting 35 U.S.C. 103." *Id.* 305 F.2d at 903–04, 134 USPQ at 329–30. The *Kirchner* court held that it was not required "that a parent case disclose the

same utility as a later application to entitle the latter to the benefit of the filing date of the parent." *Id.* at 904, 134 USPQ at 330. In the case at bar the additional description was not of a new use, but of the existing physical structure of the product. On the basis of this precedent, the inclusion of the existing microstructure as a descriptive term in the '299 claims does not cause the '299 claims to lose their entitlement to the date of the first-filed '954 application.

The district court relied on *Langer v. Kaufman*, 465 F.2d 915, 918, 175 USPQ 172, 174 (CCPA 1972). In *Langer* the diffraction pattern specifically recited in an interference count was not expressly described in the specification. The court held, "To prove inherency, the burden is on appellants to show that the 'necessary and only reasonable construction to be given the disclosure by one skilled in the art is one which will lend clear support to ... [this] positive limitation in the interference count.'" *Id.* (emphasis omitted) (quoting *Binstead v. Littmann*, 242 F.2d 766, 770, 113 USPQ 279, 282 (CCPA 1957)). The issue in *Langer* was entitlement to the benefit of constructive reduction to practice, which the court denied despite evidence that one of the experiments, Run E, produced the claimed diffraction pattern. The court has generally applied this standard of the "necessary and only reasonable construction" as a basis for determining whether an application could, on the basis of an inherent property, support a limitation in an interference count. *See, e.g., Wagoner v. Barger*, 463 F.2d 1377, 1380, 175 USPQ 85, 86–87 (CCPA 1972); *Snitzer v. Etzel*, 531 F.2d 1062, 1076, 189 USPQ 415, 419 (CCPA 1976). This standard, arising in the interference context, is consistent with that of the other cases on the issue of compliance with section 112, first paragraph.

In this case, the invention of the '299 claims is a ceramic product. That product is the same as the product in the '954 application, and has the same structure. It was conceded that anyone with a microscope would see the microstructure of the product of the '954 application. The disclosure in a subsequent patent application of an inherent property of a product does not deprive that product of the benefit of an earlier filing date. Nor does the inclusion of a description of that property in later-filed claims change this reasonable result.

We conclude that the district court erred in holding that the '299 claims were not entitled to the '954 filing date.

REVERSED.