58 CCPA

**Application of Wayne H. REYNOLDS.**

**Patent Appeal No. 8526.**

United States Court of Customs
and Patent Appeals.

June 10, 1971.

Cornelius J. O'Connor, Chicago, Ill., attorney of record, for appellant; Homer R. Montague, Washington, D. C., John J. Pederson, Chicago, Ill., of counsel.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents; Fred W. Sherling, Washington, D. C., of counsel.

Before RICH, ALMOND, BALDWIN and LANE, Judges, and LANDIS, Judge, United States Customs Court, sitting by designation.

LANE, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the rejection of claims 9–18, all the claims remaining in appellant's application serial No. 343,281, filed February 7, 1964, for "Continuously Adjustable UHF Tuner."

Appellant's application discloses a tuner for use in the UHF range (470 to 890 megacycles). The invention claimed is most readily understood by reference to the application drawing, which we reproduce in full.

FIG. 1

FIG. 3

FIG. 2

FIG. 4

[A4107]

Referring to Fig. 1, the tuner there disclosed consists of two preselector stages 12, 13 and an oscillator stage 15. Each stage is in the form of a tunable coaxial transmission line, with the inductors 22, 32, 42 forming the inner conductors and the chassis compartment walls forming the outer conductors. Each stage is tunable by virtue of a variable capacitor comprising a stationary plate and a pair of rotatable plates.

The stationary plates 24, 34, 44 consist of planar extensions of the corresponding inductors 22, 32, 42. The rotatable plates 26 and 36, which are conductively mounted on tuning shaft 17, are multi-slotted as seen in Fig. 2 and plates 46 are single-slotted at 47, as seen in Fig. 3. Each of the rotatable plates has a bendable tab portion 26′, 36′, 46′, the function of which is to permit establishment of whatever minimum capacitance is necessary to tune the stage to the highest-frequency channel in the UHF band. The slot in each of plates 46 is to permit bending of the major portion of those plates to tune to the lowest-frequency channel in the band. The other slots in plates 26 and 36 are to permit bending of the various leaves of those plates so that the preselector stages will "track" the oscillator frequency over the entire band, i. e., the resonant frequency of each preselector stage is adjusted at each channel so that it is always displaced by 40 megacycles from the frequency of the oscillator for proper mixing in coupling loop 38.

## THE OBVIOUSNESS REJECTION

Claims 9–14 were rejected for obviousness. Claim 9, with additional paragraphing, letters, and numerals supplied, is as follows:

9. A continuously adjustable UHF tuner comprising:

(A) a housing having transversely disposed conductive walls defining a plurality of compartments;

(B) a control shaft extending through said compartments and rotatably supported by said walls;

(C) a plurality of tunable frequency selector circuits individually included within an assigned one of said compartments, each of said selectors comprising

(1) a multi-turn inductor spaced from the walls of its compartment to constitute therewith a transmission line section having an electrical length approximately equal to one-quarter wavelength at the high frequency end of its tuning band

and

(2) an adjustable capacitor for tuning said selector over a band equal in width to the UHF band, said adjustable capacitor having

(a) a stationary electrode formed as an extension of an end turn of said inductor

Claims 10–13 depend directly from and having

(b) a movable electrode secured to said shaft for movement from a first position in which said capacitor exhibits minimum capacitance to tune said selector to the high frequency end of its tuning range to a second position in which said capacitor exhibits maximum capacitance to tune said selector to the low frequency end of said tuning range, and said movable electrode having

(i) a principal body portion

and further having

(ii) another portion which is located at one end of and is transversely adjustable relative to said principal body portion and constitutes the predominant tuning adjustment for establishing said high frequency end of said tuning range.

claim 9. Claim 10 adds the recitation that each capacitor has two movable electrodes; claim 11 recites that the rotatable electrode has a third portion, located at the opposite end of the principal portion, which is adjustable to establish the low-frequency (maximum capac-

itance) end of the tuning range; claim 12 recites that the transmission line sections of the selectors have essentially the same physical dimensions and that the stationary and movable electrodes are essentially the same in size and configuration; claim 13 recites that the stationary electrode is a planar extension of the inductor and is disposed parallel to and offset from the inductor axis. Claim 14 depends from claim 13 and adds the limitation that a wall of the housing has an aperture to provide coupling between the selector stages.

The claims stand rejected as unpatentable over Carlson[1] in view of Giacoletto,[2] Reiches[3] and Eland.[4]

Carlson discloses a VHF–UHF tuner having two selector stages, each including a capacitively loaded coaxial transmission line for tuning through the UHF band. Appellant correctly points out that Carlson does not disclose the inductor and capacitor structures recited in appellant's claims. As to the capacitor, Carlson states only that it has fixed and rotatable sets of plates, with one set being mounted on the chassis and the other set connected to the central conductor of the transmission line. Appellant concedes that the broad idea of a compartmented chassis in which are formed tunable transmission line sections as UHF selector stages is old and relies for patentability on the structural details recited in the claims.

Giacoletto discloses a compartmented high-frequency tuner in which the rotatable capacitor plates are slotted to permit tuning adjustments. None of the leaves thus formed on the plates is disclosed as being intended to permit adjustment to establish the principal capacitance at the high-frequency end of the band.

Reiches and Eland each discloses the use of multi-turn inductors and capacitors having slotted, adjustable rotor plates. In each of these two patents, however, separate trimmer capacitors are used to establish the principal capacitance at the high and low frequency ends of the band.

Appellant's principal argument is that his claimed tuner eliminates the need for separate trimmer capacitors by providing bendable tabs on the rotor plates for this purpose. We are not persuaded by this argument. Given the bendable tuning plates of Giacoletto, we see no reason why one skilled in the art would not use an end leaf of Giacoletto's capacitor for the same purpose as appellant's "other portion at one end of" the principal body portion of the rotor plate if he wished to give up the advantages of separate trimmer capacitors. We agree with the examiner that a separate trimmer capacitor permits finer adjustment of minimum capacitance, especially if, as in Eland, it is adjustable by turning screws from outside the chassis after assembly.

■ We find the examiner's position on obviousness to be sound, and the board's decision on claims 9–14 is accordingly affirmed.

## THE REJECTION FOR LACK OF SUPPORT

Claims 15–18 are drawn to a variable capacitor per se and were copied for interference purposes from a patent to Schatter et al.[5] These claims are not rejected on art but for insufficient disclosure, under the first paragraph of 35 USC 112.

Claim 15, with the limitation in issue emphasized, reads:

> 15. A variable capacitor comprising two cooperating capacitor plates mounted for movement with respect to each other between a first position wherein the capitance of the capacitor is at a minimum and a second position wherein the capitance of the capacitor

1. U.S. Patent 3,252,096, May 17, 1966, filed Dec. 4, 1962.

2. U.S. Patent 2,858,440, Oct. 28, 1958.

3. U.S. Patent 2,819,391, Jan. 7, 1958.

4. U.S. Patent 3,181,069, April 27, 1965, filed June 22, 1960.

5. U.S. Patent 3,292,060, Dec. 13, 1966.

is at a maximum, one of said capacitor plates having a main part and an auxiliary part, only said auxiliary part of said one capacitor plate being opposite the other of said capacitor plates when the capacitor is in said first position thereof, said auxiliary part of said one capacitor plate being adjustable toward and away from said other capacitor plate, thereby to allow the minimum capacitance of the capacitor to be adjusted, said auxiliary part of said one capacitor plate being not opposite said other capacitor plate when the capacitor is in its second position, said capacitor further comprising *means for preventing an abrupt change in the capacitance characteristic of the capacitor at the point where said auxiliary part of said one capacitor plate ceases to be opposite said other capacitor plate.*

Claims 16–18 present no additional issues and need not be discussed here.

The examiner was of the view that appellant's application when filed contained no disclosure supporting the emphasized limitation. Appellant admitted that there was no express teaching in his specification of a structure for preventing abrupt change of capacitance as the auxiliary parts, i. e., tabs 26′, 36′, 46′, departed from confronting relationship with the stationary plates 24, 34, 44. Neither is there any mention in the specification of the function recited in the portion of the claim in issue.

Appellant relied, however, on Fig. 2 of the drawing, supra, and contended that the structure therein shown would inherently perform the recited function. The examiner, while recognizing that the drawing can be used as disclosure in supporting claims, took the position that in order to perform the recited function of preventing an abrupt change of capacitance tab 26′ in Fig. 2 would have to "form an angle with plate 24 when portion 26′ ceases to be opposite plate 24" as plate 26 is rotated clockwise toward the maximum capacitance position.

Appellant argued that, as shown in Fig. 2, tab 26′ would form an angle with the edge of plate 24 as the tab departed therefrom in clockwise rotation of plate 26. He illustrated his argument by presenting exhibit I with his amendment papers. We reproduce that exhibit.

EXHIBIT I

Position C in the exhibit shows the tab departing from confronting relationship with the plate. We think it clear that there is no substantial variance between the structure of Fig. 2 and of exhibit I, as far as the size, configuration and spacing of plate 24, shaft 17, plate 26, and tab 26' are concerned.

The examiner stated in his answer that appellant's argument was "mere conjecture unsupported by the original disclosure," and noted that "appellant's device will function for the intended use," i. e., tuning through the UHF band, "without the means and function of claim 15 and as such this claimed means is not inherent in the structure." The board stated that it was "in full accord with the position of the Examiner as expressed in his Answer on this ground of rejection." We are not.

 First, we do not think appellant's position is "mere conjecture" in view of what is apparently a geometric certainty in Fig. 2. We realize that a patent drawing does not have to be to any particular scale. Nevertheless, a person attempting to construct a capacitor following appellant's disclosure would have to distort significantly the relationships shown in Fig. 2 in order not to produce a device which would inherently perform the recited function. In view of the unusual shape of plate 24 and the eccentric mounting of plate 26 on shaft 17, we think a person skilled in the art would suspect that there was some reason for the relationships shown in the drawing and would not regard such disclosure as accidental or arbitrary.

Second, the question of whether appellant's device would function as intended (continuous tuning through the band) without the means and function of claim 15 is not determinative. As was stated by the court in Technicon Instruments Corp. v. Cole Instruments, Inc., 255 F. Supp. 630 (N.D.Ill.1966), aff'd, 385 F.2d 391 (7th Cir. 1967):

By disclosing in a patent application a device that inherently performs a function, operates according to a theory, or has an advantage, a patent applicant necessarily discloses that function, theory or advantage even though he says nothing concerning it. The application may later be amended to recite the function, theory or advantage without introducing prohibited new matter.

*Id.* at 640–641.

The Schatter patent, from which claims 15–18 were copied, was not included in the record before us. However, the Patent Office has not taken the view that the copied claims are ambiguous, and hence there is no need at this point to consider the context in which they originated.

 For the foregoing reasons, we conclude that appellant's application as filed did support claims 15–18, and the board's decision with respect to these claims is therefore reversed.

### SUMMARY

The decision of the board is affirmed as to claims 9–14 and reversed as to claims 15–18.

Modified.