Randy WILLIAMS, Chapter 7 Trustee for the Estate of Lana Davis Johnson, and Jeffrey W. Johnson, Plaintiffs–Counterdefendants,

v.

GENERAL SURGICAL INNOVATIONS, INC., Tyco International, Ltd., and Origin Medisystems, Inc., Defendants-counterclaimants.

Civ.A. No. 1:00CV037.

United States District Court,
E.D. Texas,
Beaumont Division.

Jan. 14, 2002.

Houston, TX, for Randy Williams and Jeffrey W. Johnson.

Charley L. Smith, Bellville, TX, for Lana Davis Johnson.

Paul Withington Gertz, Germer & Gertz, Beaumont, TX, John C. Kappos, Hope E. Melville, Polaphat Veranvanich, James W. Geriak, Lyon & Lyon, Irvine, CA, for General Surgical Innovations, and Tyco International, Inc.

Floyd R. Nation, Hemant Hari Kewalramani, Arnold, White & Durkee, Houston, TX, Dewey J. Gonsoulin, Mehaffy & Weber, Beaumont, TX, Doak C. Procter, IV, Ronald G. Bliss, Houston, TX, for Origin Medsystems, Inc.

**MEMORANDUM OPINION AND ORDER**

SCHELL, District Judge.

**I. Introduction**

Plaintiff Jeffrey Johnson and his father Dr. Gerald Johnson ("inventors") are the co-inventors of U.S. Patent No. 5,655,545 ("the '545 patent"). The '545 patent claims a method of surgical dissection of body tissue. Dr. Gerald Johnson previously assigned his rights in the '545 patent to his late wife Lana Davis Johnson. Plaintiff Randy Williams is the bankruptcy trustee for the estate of Lana Davis Johnson. Plaintiffs allege that Defendants infringe claims 1–3 of the '545 patent. General Surgical Innovations, Inc. and Tyco International, Ltd. (collectively referred to as "GSI") filed two motions for summary judgment.[1] The first motion for summary judgment asserts that:

(1) the effective filing date of claims 1–3 of the '545 patent is March 30, 1995, not February 6, 1992; and

(2) the '545 patent is invalid according to Title 35 U.S.C. § 102(b) as being

J. Thad Heartfield, Jr., Heartfield & McGinnis, Beaumont, TX, Neal Elton Dry, Dry & Tassin, Arnold Anderson Vickery,

1. [Dkt # 64, 65].

anticipated by a printed publication describing the invention and/or commercial offer for sale of the invention more than one year before the March 30, 1995 filing date.

The second motion for summary judgment asserts that:

(1) the '545 patent is invalid even if it is entitled to a February 6, 1992 filing date on two bases:

(a) the '545 patent is anticipated by a commercial offer for sale of the invention more than one year before the February 6, 1992 filing date according to Title 35 U.S.C. § 102(b); and

(b) the '545 patent is obvious according to Title 35 U.S.C. § 103.

## II. Summary Judgment Standard

A court shall grant summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "Thus, summary judgment is proper only when no 'reasonable jury could return a verdict for the nonmoving party.' *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)." *Monon Corp. v. Stoughton Trailers, Inc.*, 239 F.3d 1253, 1257. "In determining whether there is a genuine issue of material fact, the trial court must assume that the evidence presented by the non-movant is credible and draw all justifiable inferences therefrom in the non-movant's favor." *Id.*

The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

A patent is presumed valid. *W.L. Gore & Assoc., Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1553, 220 U.S.P.Q. (BNA) 303, 313 (Fed.Cir.1983), *cert. denied*, 469 U.S. 851, 105 S.Ct. 172, 83 L.Ed.2d 107 (1984). Clear and convincing evidence is required to overcome the presumption of validity. *Id.*

## III. Priority Date of the '545 Patent

### A. Background

A patent application includes two basic components: 1) drawings "necessary for understanding the subject matter sought to be patented,"[2] and 2) a specification describing the invention.[3] The specification component typically comprises two parts: 1) a detailed description of the invention, particularly of the embodiments of the invention illustrated in the drawings,[4] and 2) "one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards

---

2. Title 35 U.S.C. § 113.

3. Title 35 U.S.C. § 112.

4. The detailed description section also typically includes, preceding the description of the

embodiments, a background section describing prior work related to the invention, a summary of the invention, and a brief description of the drawings. See 2 Patent Practice 10–11 (PRI 1993).

as his invention."[5] For clarity of communication, this memorandum will use the term "disclosure" to refer collectively to the drawings and detailed description portions, i.e., the non-claims portions, of the patent application. It is the claims that define the invention, not the disclosure. As will be discussed at length below, it is the disclosure that must reasonably convey to the skilled artisan that the inventor had "possession" of the claimed invention at the time the disclosure was filed.[6]

The date on which a patent application is filed—the "filing date"—is critical because the patent statute sets forth four events which cause a patent claim to be invalid if any one of the events occurred more than one year before the filing date.[7] In this case, Defendants contend that the filing date to which the allegedly infringed claims are entitled is March 30, 1995, and that at least three of the four statutory events occurred more than one year before that date, thereby invalidating those claims. A discussion of Title 35 U.S.C. § 120—a portion of the patent statute that relates to continuing application practice—is now helpful.

The simplest scenario of obtaining a patent is as follows. The inventors file a single patent application, i.e., a disclosure and claims, directed to a single invention, the Patent and Trademark Office (PTO) issues the patent without requiring any changes to the claims, and the inventor goes home happy with his single patent on his single invention. However, the simple scenario rarely happens, and did not happen in the present case. A more complicated and common scenario will now be described, which, although not strictly the facts of the present case, will be helpful in understanding the policy behind § 120.

Imagine a team of automotive engineers at General Motors designing a new sports car. The corporate patent attorney is told that the new car includes several patentable inventions, such as a novel headlight, a novel suspension system, a novel carburetor, and other inventions. The patent attorney is instructed to obtain patents on the inventions. One course the patent attorney could pursue is to obtain the drawings, schematics, design documents, etc. for the new headlight, prepare a disclosure of the new headlight based on the information received, draft claims to the novel headlight, and file in the PTO a patent application directed to the new headlight that includes the disclosure and claims. He could then serially do the same for the new suspension system. He could then serially do the same for the new carburetor.

However, § 120 enables the patent attorney to pursue another course. He may obtain the schematics and design documents related to the entire new car, then prepare a disclosure of the entire car based on the information received, draft claims to only one of the inventions (say the novel headlight), and file a patent application including the disclosure of the entire car and the claims to the headlight. He may subsequently, perhaps months or years later,[8] draft claims to the novel sus-

---

5. Title 35 U.S.C. § 112, ¶ 2.

6. *Augustine Medical, Inc. v. Gaymar Industries, Inc.*, 181 F.3d 1291, 1302 (Fed.Cir. 1999).

7. "A person shall be entitled to a patent unless .... (b) the invention [defined by the claims] was 1) patented, 2) described in a printed publication, 3) in public use, or 4) on

sale in this country, more than one year prior to the date of the application for patent in the United States", § 102(b) (reference numerals added).

8. He must file the subsequent application prior to the issue or abandonment of the original application. Additionally, at least one of the inventors of the original application must be

pension system, and file a patent application including the original disclosure of the entire car and the claims to the suspension system. Finally, he may later draft claims to the novel carburetor, and file a patent application including the original disclosure of the entire car and the claims to the carburetor.

In this scenario, § 120 dictates that all three sets of claims are entitled to priority of the filing date of the original application as long as original disclosure meets the three requirements of Title 35 U.S.C. § 112. The three § 112 requirements include the written description requirement, the enablement requirement, and the best mode requirement.[9] In the present lawsuit, the written description requirement is at issue, which would require the disclosure of the entire car filed in the first application to reasonably convey to the skilled artisan that the inventor had "possession" of each of the claimed inventions at the time the disclosure was filed.[10] With this background in mind, the court recounts the facts relevant to the summary judgment motion on the filing date priority issue.

The inventors filed an original application for a utility patent in the PTO on February 6, 1992 describing a method of surgical breast augmentation and instruments used for that purpose. The original application subsequently issued on November 2, 1993 as U.S. Patent No. 5,258,026 ("the '026 patent") entitled ENDOSCOPIC AUGMENTATION MAMMOPLASTY AND INSTRUMENTS THEREFOR.[11]

The '026 disclosure describes a breast augmentation surgery begun by making an incision in the female navel and inserting a tube into the incision up to a location behind the breast to create a tunnel between the incision and location behind the breast. Next, the tube is removed, an inflatable breast implant device is deflated, rolled up, and placed inside the tube, and the tube is reinserted into the tunnel. The inflatable breast implant is essentially a balloon that has a valve to which a long thin fill tube is attached. When the larger tube is reinserted, the fill tube trails out the end of the larger tube. The larger tube is then removed, leaving the deflated implant behind the breast, with the fill tube protruding from the navel. Next, the surgeon fills the implant with saline solution through the fill tube and as the implant expands it dissects tissue surrounding it, thereby creating a pocket behind the breast as described here:

> Whatever the final volume of the implant is intended to be, it is overfilled by a volume that is 50% greater than the intended final volume (FIG. 15). As the implant is being inflated and overexpanded the surgeon holds pressure and releases pressure in the appropriate manner to shape and form the pocket from space 42 as it is being created by the inflation/expansion of the implant.[12]

Next, the over-inflation volume of saline is drained. Finally, the saline solution fill tube is removed and the incision is su-

---

an inventor on the subsequent application. See Title 35 U.S.C. § 120.

9. § 120 does not require that inventors follow the course of action described in the General Motors example, which was given for illustration purposes. However, § 120 does require enablement, best mode, and written description.

10. *Augustine Medical, Inc. v. Gaymar Industries, Inc.*, 181 F.3d 1291, 1302 (Fed.Cir. 1999).

11. Contrary to the title, only method claims issued in the '026 patent.

12. '026 patent col. 9, lines 45–52.

tured, leaving the implant in place behind the breast.

On March 30, 1995, while an intervening divisional application of the original application [13] was still pending in the PTO, the inventors filed a continuation-in-part (CIP) application of the divisional application.[14] The CIP claimed priority of the February 6, 1992 filing date of the original application through the divisional application pursuant to § 120. The CIP included claims directed to a method of surgical dissection of body tissue. The CIP application subsequently issued on August 12, 1997 as the '545 patent, entitled DISSECTION OF TISSUE BY TISSUE EXPANDER.

The disclosure of the CIP application was *not* identical to the disclosure of the divisional application from which it claimed priority. The drawings were identical; however, the description of the embodiments was modified via additions, deletions, and changes. Particularly relevant here, the inventors modified the original disclosure to create the CIP disclosure that explicitly describes removing the implant after using it to dissect tissue to create the pocket for the implant. The "implant" is renamed in the CIP disclosure as an "inflatable tissue expander device," and is referred to in the claims as "an inflatable hollow member." The last step of allegedly infringed claim 1 issuing from the CIP application is "removing the hollow member on completion of surgery." [15]

As Plaintiffs acknowledge,[16] the original disclosure contains no explicit mention or description of removing the implant. Additionally, no surgery other than a breast augmentation surgery is mentioned in the original disclosure. Particularly, no non-implant-type surgery is mentioned in the original disclosure, such as an abdominoplasty (commonly referred to as a "tummy tuck") or other surgery requiring dissection of tissue but not requiring the implant [17] used to dissect the tissue to remain in the patient.

**13.** Pursuant to Title 35 U.S.C. § 121, the PTO found that the original application claimed two or more independent and distinct inventions and required the application to be restricted to claiming only one of the inventions. Consequently, the inventors filed a divisional application on October 12, 1993 that claimed priority of the February 6, 1992 filing date of the original application in accordance with § 121. Because the common practice for filing a divisional application is to copy the disclosure from the original application to the divisional application, and because the record does not indicate otherwise, the court assumes the disclosure of the divisional application was identical to the disclosure of the original application from which it claimed priority.

**14.** The divisional application was subsequently abandoned.

**15.** Claim 1 reads in its entirety:
1. A method of surgical dissection of body tissue comprising the steps of
 making an incision into a body to a point where tissue dissection is needed,
 providing an inflatable hollow member having an elongated filling tube,
 inserting said hollow member into said incision to said point where tissue dissection is needed,
 filling said hollow member with fluid to expand the member to a size greater than said incision to separate and dissect said body tissue along the edges of said incision and peripherally outward from said hollow member and
 removing the hollow member on completion of surgery.

**16.** Deposition of Gerald Johnson, Exh. 18, 105:16–21.

**17.** The original disclosure refers to the balloon-like device as an implant. Although the allegedly infringed claims, the CIP disclosure, the experts, and the briefs may use different terms, it is what the original disclosure conveys that matters for purposes of fulfilling the written description requirement. Hence, the court will use the term "implant" unless the context dictates otherwise.

■ GSI contends that claims 1–3 of the '545 patent are not entitled to the benefit of the February 6, 1992 filing date of the original patent application ("the earlier filing date"). Because different claims in a patent may have different filing dates,[18] the court restricts its analysis to claims 1–3.

*B. Written Description Requirement*

In order for claims 1–3 to be entitled to the earlier filing date,[19] § 120 requires the original patent application to meet the three requirements of § 112, which in patent law parlance are commonly referred to as the written description requirement, the enablement requirement, and the best mode requirement. It is the written description requirement that is contested here.[20]

■ Both parties cite *Augustine Medical* for the written description requirement test, which seeks to determine whether the "disclosure of the application relied upon reasonably convey[s] to the artisan that the inventor had possession at that time of the later claimed subject matter." *Augustine Medical, Inc. v. Gaymar Industries, Inc.*, 181 F.3d 1291, 1302 (Fed.Cir.1999) (internal citations omitted); *Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1158 (Fed.Cir. 1998) ("To meet [the written description] requirement, the disclosure of the earlier application, the parent, must reasonably

convey to one of skill in the art that the inventor possessed the later-claimed subject matter at the time the parent application was filed."); *Vas–Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1563 (Fed.Cir.1991) ("[T]he test for sufficiency of support in a parent application is whether the disclosure of the application relied upon 'reasonably conveys to the artisan that the inventor had possession at that time of the later claimed subject matter.'") (citing *Ralston Purina Co. v. Far–Mar–Co, Inc.*, 772 F.2d 1570, 1575 (Fed.Cir.1985) (quoting *In re Kaslow*, 707 F.2d 1366, 1375 (Fed.Cir. 1983))).

The "later claimed subject matter" includes all the elements and limitations of the claims that define the invention. Plaintiffs' are correct when they say of the written description requirement that "the focus is on whether the inventor was possessed of *the invention* at the filing date of the parent application."[21] "The invention" under scrutiny is defined by all elements of the allegedly infringed claims, which include the step of removing the hollow member in claims 1–3.[22]

■ Showing that a claim element, such as a step in a claimed method, not explicitly described in the original disclosure would have been *apparent* to one skilled in the art does not satisfy the written description requirement. In *In re Winkhaus*, the appellants admitted that their

**18.** *See Vas–Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1567 (Fed.Cir.1991).

**19.** Because the dispute between the parties focuses on the "removing the hollow member on completion of surgery" step of claim 1, which is incorporated as a limitation into claims 2 and 3, for simplicity the court restricts its analysis to claim 1.

**20.** *Lockwood v. American Airlines, Inc.*, 107 F.3d 1565, 1571 (Fed.Cir.1997) ("In order to gain the benefit of the filing date of an earlier application under 35 U.S.C. 120, each appli-

cation in the chain leading back to the earlier application must comply with the written description requirement of 35 U.S.C. 112. *In re Hogan*, 559 F.2d 595, 609, 194 USPQ 527, 540 (CCPA 1977).").

**21.** [Dkt # 66] at 8 (emphasis added).

**22.** The "removing the hollow member on completion of surgery" step was added by amendment to claim 1 during prosecution of the CIP application to avoid a to prior art rejection. See [Dkt # 66] Exh. 11.

specification did not explicitly disclose one of the steps of the claim at issue. Winkhaus argued that the missing, *i.e.*, non-disclosed, step was *apparent* from the specification, as do Plaintiffs.[23] Nevertheless, the Federal Circuit's predecessor held that:

> Although it may be *apparent*, as appellants argue, that the vapors of the reaction mixture at the end of a given heating zone *could* be utilized for heating the mixture flowing through this zone, that does not mean that such a step is *described* as part of their invention. That a person skilled in the art might realize from reading the disclosure that such a step is *possible* is not a sufficient indication to that person that that step is part of appellants' invention. Such an indication is the least that is required for a description of the invention under the first paragraph of § 112.

*In re Winkhaus*, 527 F.2d 637, 640 (CCPA 1975) (emphasis in original). The same may be said here. Although it may be *apparent*, as Plaintiffs argue, that an inflatable implant used to dissect tissue *could* be removed after dissecting, that does not necessarily mean the step was *described* as part of the invention in the original disclosure. That a skilled surgeon might realize from reading the original disclosure that the step of removing the inflatable implant after surgery is *possible* is not sufficient to indicate that the step would become part of a later claimed invention, *i.e.*, that the inventors had possession of the invention.

The Federal Circuit addresses the issue similarly in *Lockwood v. American Airlines*:

> Entitlement to a filing date does not extend to subject matter which is not

disclosed, but would be obvious over what is expressly disclosed. It extends only to that which is disclosed. While the meaning of terms, phrases, or diagrams in a disclosure is to be explained or interpreted from the vantage point of one skilled in the art, all the limitations must appear in the specification. The question is not whether a claimed invention is an obvious variant of that which is disclosed in the specification. Rather, a prior application itself must describe an invention, and do so in sufficient detail that one skilled in the art can clearly conclude that the inventor invented the claimed invention as of the filing date sought. *See Martin v. Mayer*, 823 F.2d 500, 504, 3 USPQ2d 1333, 1337 (Fed.Cir. 1987) (stating that it is "not a question of whether one skilled in the art *might* be able to construct the patentee's device from the teachings of the disclosure.... Rather, it is a question whether the application necessarily discloses that particular device.") (quoting *Jepson v. Coleman*, 50 C.C.P.A. 1051, 314 F.2d 533, 536, 136 USPQ 647, 649–50 (1963)).

.... One shows that one is "in possession" of *the invention* by describing *the invention*, with all its claimed limitations, not that which makes it obvious. *Id.* ("[T]he applicant must also convey to those skilled in the art that, as of the filing date sought, he or she was in possession *of the invention*. The invention is, for purposes of the 'written description' inquiry, *whatever is now claimed.*") (emphasis in original). One does that by such descriptive means as words, structures, figures, diagrams, formulas, etc., that fully set forth the claimed invention. Although the exact terms need not be used *in haec verba*,

---

**23.** Plaintiffs' response brief states: "because [the] step [of removing the inflatable hollow member] would certainly be *apparent* to those

'skilled in the art', the Court should deny GSI's motion." [Dkt # 66] at 7 (emphasis added).

*see Eiselstein v. Frank,* 52 F.3d 1035, 1038, 34 USPQ2d 1467, 1470 (Fed.Cir. 1995) ("[T]he prior application need not describe the claimed subject matter in exactly the same terms as used in the claims ...."), the specification must contain an equivalent description of the claimed subject matter. A description which renders obvious the invention for which an earlier filing date is sought is not sufficient.

Lockwood further argues that his expert's declaration was sufficient to raise a genuine issue of material fact regarding what the intervening applications disclosed to one skilled in the art. However, as American argues, one intervening application failed to disclose a computer system connected to multiple vendors and another, while disclosing a central computer with a video disk player, failed to disclose individual merchandising apparatus that contained video disk players or other equivalent storage means. Lockwood's expert averred that the disclosed terminal in the former application "can be connected" to multiple vendors and that, although the latter application only "discusses the use of a television set and a keypad at a consumer's home," it would have been apparent to one skilled in the art that "Lockwood also envisioned the use of a terminal" containing a video disk player. That does not solve Lockwood's problem. Lockwood claimed a distinct invention from that disclosed in the specification. It is not sufficient for purposes of the written description requirement of 112 that the disclosure, when combined with the knowledge in the art, would lead one to speculate as to modifications that the inventor might have envisioned, but failed to disclose. Each application in the chain must describe the claimed features.

*Lockwood v. American Airlines, Inc.,* 107 F.3d 1565, 1572 (Fed.Cir.1997) (emphasis in original). In the present case, it is not sufficient that a claimed method of tissue dissection—with all its limitations, including removing the inflatable hollow member—is an obvious variant of the breast augmentation method described in the original disclosure. Rather, the original disclosure itself must describe the claimed method of tissue dissection that requires removing the inflatable hollow member in sufficient detail that one skilled in the art can clearly conclude that the inventors invented, *i.e.,* had possession of, the claimed invention as of the filing date of the original application.

■ Plaintiffs contend "the *summary judgment record* unquestionably demonstrates that Dr. Johnson did have possession of the complete invention." [24] However, it is the *disclosure* of the original patent application that must show the inventor had possession of the invention, nothing else. *Augustine Medical, Inc. v. Gaymar Industries, Inc.,* 181 F.3d 1291, 1302 (Fed.Cir.1999) ("a court must examine whether the '*disclosure of the application* relied upon reasonably convey[s] to the artisan that the inventor had possession at that time of the later claimed subject matter.' ") (emphasis added); *Lockwood v. American Airlines, Inc.,* 107 F.3d 1565, 1571 (Fed.Cir.1997) ("Lockwood argues that the district court erred by looking solely at the applications themselves. We do not agree. It is the disclosures of the applications that count. Entitlement to a filing date does not extend to subject matter which is not disclosed, but would be obvious over what is expressly disclosed. It extends only to that which is disclosed."). Hence, for example, Plaintiff

24. [Dkt # 66] at 7 (emphasis added).

cannot rely on Dr. Gerald Johnson's notes made during the informed consent consultation with patient D to establish that he had possession of the invention at that time.

■ This distinction points up a relevant policy consideration behind the written description requirement: [25] preventing the inventor from overreaching beyond what he has reasonably conveyed in his original disclosure relied upon for a filing date. *Vas–Cath Inc. v. Mahurkar,* 935 F.2d 1555, 1560 (Fed.Cir.1991) ("Adequate description of the invention guards against the inventor's overreaching by insisting that he recount his invention in such detail that his future claims can be determined to be encompassed within his original creation.") (citing *Rengo Co. v. Molins Mach. Co.,* 657 F.2d 535, 551). Plaintiffs allude to the policy in their response brief: "[t]he underlying policy, obviously, is to . . . . deny patent protection for subsequently developed ideas." If, as the court finds, the original disclosure did not reasonably put Defendants on notice that the inventors were in possession of the claimed method of surgical dissection including removing the inflatable implant on completion of the dissection, then it would be against public policy to now make Defendants answerable for infringement allegations based on the earlier filing date, which is in turn based on documents to which Defendants had no access [26] and could therefore receive no notice.

The policy prohibiting overreaching in turn flows from at least one purpose of the patent system, which is to benefit the public by encouraging inventors, such as the Defendants, to invest their time and energy in developing improvements upon and new uses of ideas published in patents. If patent holders are allowed to overreach beyond what they notify other inventors they possess, investment in development that would be useful to the public is stifled for fear of overreaching, and the goal of the patent system is not obtained.

### C. The Original Disclosure and The Declarations

■ Attention is now turned to the evidence in the summary judgment record Plaintiffs rely upon to raise a genuine issue of material fact regarding whether the original disclosure reasonably conveys to a skilled artisan that the inventors had possession of the claimed method of surgical dissection of body tissue including removing an inflatable hollow member (referred to as an "implant" in the original disclosure) on completion of the dissection. The court will examine the original disclosure, the declarations of Plaintiffs' two experts, and the declaration of Dr. Gerald Johnson.

### 1. The Original Disclosure

The three excerpts of the original disclosure that Plaintiffs principally allege reasonably convey to a person skilled in the art that the inventors possessed the step of removing the inflatable hollow member on completion of surgery in the claimed method of surgical dissection of body tis-

---

**25.** Some courts and commentators also refer to the written description requirement of § 112 as the requirement of an "adequate description of the invention", *see Rengo* cited above, or as the "description requirement", see 2 D. Chisum, Patents § 7.04 at 7–136.

**26.** Plaintiffs' acknowledge "the 'informed consent' notes of January 26, 1991, were priv-

ileged documents, not available to anyone other than the doctor and patient." [Dkt # 66] at 3. "These notes . . . . were certainly not published to or available to anyone. To the contrary, under Texas law, this patient's chart, including these notes, was privileged." *Id.* at 4.

sue at the filing of the original disclosure are here listed: [27]

(1) Another object of this invention is to provide a new and improved procedure for breast augmentation surgery in which there is minimal bleeding, bruising and swelling as a result of the "tissue expansion" technique to dissect the pocket, as opposed to the sharp and/or blunt techniques of dissection presently used.[28]

(2) Whatever the final volume of the implant is intended to be, it is overfilled by a volume that is 50% greater than the intended final volume (FIG. 15). As the implant is being inflated and overexpanded the surgeon holds pressure and releases pressure in the appropriate manner to shape and form the pocket from space 42 as it is being created by the inflation/expansion of the implant.[29]

(3) There is minimal bleeding, bruising and swelling as a result of the "tissue expansion" technique to form the pocket, as opposed to the sharp and/or blunt techniques of dissection presently used.[30]

As may be readily observed from the three excerpts above, as well as from a cover-to-cover reading of the '026 disclosure, the step of "removing the hollow member on completion of surgery" in claim 1 is explicitly mentioned nowhere in the original disclosure.

Furthermore, the context of the original disclosure teaches away from removing the "inflatable hollow member." The title of the original disclosure refers exclusively to breast augmentation ("Endoscopic Augmentation Mammoplasty"). The hollow member is referred to in the original disclosure as an "implant" (see cited '026 text above), teaching the artisan that it is to be left in the patient, not removed. Apparently the inventors realized as much by the time they filed their CIP application.[31]

Although excerpt (1) refers to a tissue expansion technique to dissect a pocket, it does so in the context of an object of the invention being to provide a new and improved method for *breast augmentation surgery*. The advantage of excerpt (3) is stated in the context of surgical procedures for *breast augmentation*. The text of excerpt (3) is preceded in the original disclosure by the text: "Advantages of this procedure over prior and current *surgical procedures for breast augmentation* are:".[32] Both excerpts (1) and (3) refer to a " 'a tissue expansion' technique to dissect." However, they refer to dissecting "the pocket", which is specifically created to *retain* the implant indefinitely. No other impression is left but that the implant is left in the pocket, not removed.

Plaintiffs' surreply states: "There is no mention of removing a tissue expander [33]

27. The reference numerals (1), (2), and (3) are added by the court for ease of reference.

28. '026 patent col. 5, lines 13–18.

29. '026 patent col. 9, lines 45–52.

30. '026 patent col. 10, lines 54–57.

31. The text in excerpt (2) was changed from "implant" in the original disclosure to "device" in the CIP disclosure. The implant is shown in the drawings of the patents as element 43 of Figures 13–17. Every place element 43 is referred to in the original disclosure, the term "implant" is used. Over 35

references to the term "implant" or variations thereof appearing in the original disclosure are removed from the CIP disclosure. For example, text from the original disclosure reciting an "implant" was changed to a "tissue expander" in the CIP disclosure. '026 patent, col. 10, line 10; '545 patent, col. 5, line 58.

32. '026 patent, col. 10, lines 47–48 (emphasis added)

33. The term "tissue expander" used in Plaintiffs' surreply statement is never used in the original disclosure, but is used extensively in the CIP disclosure.

when same is used as an implant....".[34] However, the original disclosure only discusses using the implant *as an implant,* never as a "non-implant." That is, the original disclosure only discusses using the implant in a breast augmentation surgery—which is a surgery in which the purpose of the implant is to be left in the patient, not removed from the patient. Not a single other surgery, such as an abdominoplasty or other non-implanting surgery, requiring tissue dissection is described in the original disclosure.

Plaintiffs' surreply goes on to state that the reason the original disclosure does not explicitly disclose removing the implant is "because any surgeon skilled in the art would know that one should not remove a device which was intended to be permanently implanted in the patient."[35] Plaintiffs' surreply illustrates a fundamental misunderstanding of the essence of the written disclosure requirement. Plaintiffs explain why the original disclosure does *not* convey the missing step, not what the original disclosure *does* convey—the relevant inquiry of the written description requirement. The essence of the written description requirement in the filing date priority context is to affirmatively put others on notice that the inventor has possession of the invention later claimed. The original disclosure must convey the claimed element of removing the implant. It is irrelevant that a skilled surgeon would know that in a breast augmentation the implant should be left implanted.

The implication of Plaintiffs' statement is that a skilled surgeon would know that in a non-implant surgery like an abdominoplasty, the implant would be removed after being used to dissect tissue. This may be true. However, because non-implant surgeries are never mentioned in the original disclosure, the skilled surgeon is not conveyed the invention of dissecting tissue by inflating an implant and then removing the implant.

Plaintiffs' statement of material facts states: "There is nothing in this patent which requires the surgeon to leave the tissue expander in the body, although that is the preferred embodiment."[36] The statement implies that the original disclosure conveys other surgery embodiments besides breast augmentation. The court can find no other embodiments. The breast augmentation surgery is the only embodiment of a surgery involving dissecting tissues using an inflatable hollow member described in the original disclosure.

## 2. The Declarations

As an initial matter, declarations of experts may or may not necessarily raise a genuine issue of material fact in the written description requirement context, particularly where an element of the claim at issue is not explicitly described in the original disclosure. *Lockwood,* 107 F.3d at 1572 ("It is undisputed that one of the intervening applications does not describe an [element of the claimed invention]. Therefore, the declaration by [patentee's] expert does not raise a genuine issue of material fact.").

### a. Dr. Cotlar

Dr. Cotlar declares that in his opinion the three excerpts from the original disclosure cited above teach a person having ordinary skill in the art that " 'tissue expansion' for general surgical purposes" would include essentially all the steps of claim 1, including removing the expandable

---

**34.** [Dkt # 74] at 2.

**35.** [Dkt # 74] at 2.

**36.** [Dkt # 66] at 5.

member. "The reason for this opinion is that, for general surgical purposes, there would be no *inherent need or purpose* for retaining the expansion member in the expanded pocket."[37]

Dr. Cotlar's declaration, rather than raising a genuine issue of material fact, supports the conclusion that the original disclosure does not meet the written description requirement. Dr. Cotlar's declaration raises the question of whether the step of removing the balloon is an inherent step in a method described in the original disclosure.

■ Within the written description requirement body of law, the courts have recognized that an inherent property of a composition of matter may have been "inherently" disclosed even though the property—which is a limitation of the later claimed invention—was not explicitly identified in the original disclosure, as long as the composition of matter was at least identified in the original disclosure. *See Kennecott Corp. v. Kyocera International Inc.*, 835 F.2d 1419 (Fed.Cir.1987). The claimed invention must be the "necessary and only reasonable construction" of what is disclosed in the parent application in order for the written description requirement to be met for purposes of claiming filing date priority. *Kennecott*, 835 F.2d at 1423.

In *Kennecott*, the original disclosure described 30 examples of a high-alpha silicon carbide ceramic product. The CIP application that claimed priority to the original disclosure added photographs of the microstructure of the ceramic product and a description of the photographs. The add-ed photographs and description reveal that the ceramic product possessed the property of an "equiaxed" microstructure, which is an inherent property of the high-alpha silicon carbide ceramic product that "anyone with a microscope would see." *Kennecott*, 835 F.2d at 1423. One of the limitations of the allegedly infringed claims issuing from the CIP application was that the ceramic had a predominately equiaxed microstructure, not described in the original disclosure, but added in the CIP application. Because the high-alpha silicon carbide ceramic identified in the original disclosure inherently possessed an equiaxed microstructure, the "necessary and only reasonable construction" of the original disclosure was that the high-alpha silicon carbide ceramic possessed the equiaxed microstructure.

Similar to inherent properties in compositions of matter, the courts have recognized that an inherent function, theory, or advantage of a device may have been "inherently" disclosed by disclosing a device that inherently performs the function, operates according the theory, or has the advantage, even though the original disclosure did not explicitly identify the function, theory, or advantage of the device.[38]

It logically follows that an inherent step of a method may have been "inherently" disclosed by disclosing a method that inherently requires or includes the step, even though the original disclosure did not explicitly identify the step of the method. If the original disclosure had disclosed a surgery that inherently included the step of removing the implant after use for dissection, then it would be reasonable for a

---

**37.** Declaration of Dr. Stephen Cotlar, [Dkt # 66] Exh. 26, ¶ 5.

**38.** *In re Reynolds*, 58 C.C.P.A. 1287, 443 F.2d 384 (CCPA 1971) ("By disclosing in a patent application a device that inherently performs a function, operates according to a theory, or has an advantage, a patent applicant necessarily discloses that function, theory, or advantage even though he says nothing concerning it.").

jury to find inherent disclosure of that step. However, the only surgery disclosed in the original disclosure is a breast augmentation, which certainly does not inherently include the step of removing the implant. The step of removing the implant that must be left in place to increase the size of the female breast is not the "necessary and only reasonable construction" of the disclosed breast augmentation surgery method.

Dr. Cotlar's reference to "general surgical purposes" seems to imply non-implant surgeries. If the disclosure had mentioned even one non-implant surgery, his statement that there would be no inherent need or purpose for retaining the implant would be one which a reasonable jury might find credible. However, there is no mention of any surgery other than a surgery where the purpose is to leave the implant in place.

If Dr. Cotlar, or anyone, were able to point to a non-implant surgery identified in the original disclosure, then it would certainly be an inherent step in such a non-implant surgery to remove the implant after performing the dissection using the implant. Assuming a non-implant surgery, such as an abdominoplasty, had been mentioned in the original disclosure—even if not described in any detail—but the removal of the implant step had not been explicitly mentioned, this would be an ideal application of the inherency doctrine. However, unfortunately for Plaintiffs, no such non-implant surgery was even mentioned in the original disclosure.

### b. Dr. Dowden

Dr. Dowden's declaration states:

[T]hese passages referenced above [col. 5, lines 13–18, col. 9, lines 45–52, col. 10, lines 54–57], although describing retaining the expansion member in the expanded pocket, would *not* be construed as indicating any inherent need, requirement, or purpose for such retention of the expansion member in the expanded pocket. ... in my opinion the referenced passages would definitely not have been interpreted as meaning that the expander device must necessarily be left in place.[39]

Dr. Dowden declares what the original disclosure does *not* convey. This is very different from declaring what the original disclosure *does* convey, which is the relevant inquiry of the written description requirement. At first glance, this may appear to be an inconsequential logical distinction; but it is in fact at the heart of the written description requirement. It is not enough that the original disclosure did not teach that the implant must be left in place after the dissection. Rather, the disclosure must affirmatively convey the step of removing the implant, or identify a surgical method in which the step of removing the implant is inherent. It does neither of these.

The statements in paragraph 2 of Dr. Dowden's declaration do not support the proposition that the *original disclosure* meets the written description requirement. Dr. Dowden's opinion is given based on what Dr. Johnson had personally taught Dr. Dowden, not on what the original disclosure conveys. Defendants cannot be put on notice of a claimed invention by what Dr. Johnson personally taught Dr. Dowden.

### c. Dr. Gerald Johnson

Dr. Gerald Johnson's declaration, to the extent it contradicts his prior deposition testimony, does not raise a genuine issue of material fact to thwart summary judg-

---

39. Declaration of Dr. Richard V. Dowden,

[Dkt # 66] Exh. 27, ¶ 5 (emphasis in original).

ment. Nevertheless, Dr. Johnson's declaration adds nothing relevant to the filing date priority issue beyond what has already been stated in the other declarations and pleadings.

Dr. Gerald Johnson declares that he performed non-implant surgeries using the inflatable balloon to dissect tissue, namely an abdominoplasty, almost a year prior to the filing of the original disclosure.[40] He could have effortlessly secured priority to the later claimed invention when filing the original disclosure, which he reviewed and approved, as indicated by the inventor's oath he was required to file with the PTO. A single sentence making mention that the method of using the implant to dissect tissue could also be used in non-implant surgeries is all that would have been required to reasonably convey that he had possession of the later claimed invention, including removing the inflatable implant. In the context of a § 102(b) bar as here, oversights such as this may be fatal. The courts have strictly applied the one-year grace period extended to inventors. It is the inventor's affirmative duty to disclose that subject matter for which he later intends to claim priority.

Based on examination of the relevant evidence in the summary judgment record, the court finds that no reasonable jury could find that the original disclosure reasonably conveyed to a skilled surgeon that the inventors had possession of the claimed method of surgical dissection of body tissue including removing the inflatable hollow member on completion of the surgery at the time the original disclosure was filed. Therefore, claims 1–3 of the

'545 patent are not entitled to the February 6, 1992 filing date.[41]

## IV. Anticipation Based on GSI/Origin Product Sales and the Kieturakis Reference

 Anticipation occurs where each and every limitation of the claimed invention is found in a single prior art reference. *In re Donohue*, 766 F.2d 531, 534 (Fed.Cir. 1985). That which infringes if later, anticipates if earlier. *Polaroid Corp. v. Eastman Kodak Co.*, 789 F.2d 1556 (Fed.Cir. 1986). Infringement is determined after the Court construes the claims. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed.Cir.1995) (*en banc*). Thus, under most circumstances, anticipation is a post-Markman consideration. As the parties should be afforded sufficient opportunity to advance their positions on the construction of the claims, the court defers these questions until after the *Markman* hearing.

## V. Anticipation Based on Sale of Surgical Services to patient "D"

 The elements of the § 102(b) on-sale bar are: 1) the invention must be "ready for patenting", and 2) the product (or method in this case) allegedly invoking the on-sale bar "must be the subject of a commercial offer for sale" prior to the critical date. *Pfaff v. Wells Electronics, Inc.*, 525 U.S. 55, 67, 119 S.Ct. 304, 142 L.Ed.2d 261 (1998). Dr. Gerald Johnson declared: "I first reduced the method of tissue expansion at issue in this case to practice during Ms. D[ ]'s surgery on Feb-

---

**40.** [Dkt # 67] at ¶ 8.

**41.** The court finds the words of Judge Rich's concurrence in *In re Barker* applicable in the present case: "The basic problem here in simple: new matter .... was inserted by amendment and the claim contains that new

matter. It therefore lacks support and must be rejected." *In re Barker*, 559 F.2d 588, 594 (J. Rich concurring) (stating in the context of a later added claim attempting to obtain priority to the original application that did not describe a limitation of the later added claim).

ruary 21, 1991. I used a balloon expander to dissect planes of tissue, and then removed the tissue expander." [Dkt # 67] Exh. 24, ¶ 8. A reduction to practice prior to the critical date—March 30, 1994—satisfies the "ready for patenting" element of *Pfaff*. *Id.* However, the court finds there is a genuine issue of material fact regarding whether the surgery performed on Ms. D was experimental or commercial.

Nevertheless, the summary judgment record indicates that Dr. Johnson performed many other abdominoplasties using the claimed invention prior to March 30, 1994 critical date.[42] The court suspects some of these surgeries involved a commercial offer for sale, and requests the parties to brief the question.

## VI. Conclusion

GSI's motion for summary judgment that claims 1–3 of the '545 patent are not entitled to the February 6, 1992 filing date is **GRANTED**. All of GSI's other motions for summary judgment are **DENIED**. GSI is invited to refile its other motions after the *Markman* hearing. Further, the parties are ordered to brief the issue of whether any surgeries performed by Dr. Johnson's using the claimed method after his admission of reduction to practice and prior to the March 30, 1994 critical date involved a commercial offer for sale.

**IT IS SO ORDERED.**

---

**42.** See [Dkt # 66] Exh. 5 paragraphs 8, 9, 12, and 13, Deposition of Irene Elaine Martin; see also [Dkt # 66] Exh. 3 Interrogatory Answers # 2 and # 3.